(13 P.3d 355)

No. 84,349

STATE OF KANSAS, *Appellee*, v. BRIAN LEGG, *Appellant*.

Opinion filed November 17, 2000.

*Jacqueline A. Cook*, of Wyrsch, Hobbs, Mirakian & Lee, P.C., of Kansas City, Missouri, for appellant.

*Scott Toth* and *Steven J. Obermeier*, assistant district attorneys, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., KNUDSON, J., and PADDOCK, S.J.

KNUDSON, J.: Brian Legg appeals from the trial court's denial of his motion to set aside the underlying judgment of conviction and permit the withdrawal of his nolo contendere pleas. Legg asserts the trial court erred because the record does not affirmatively disclose that he made knowing and voluntary pleas.

Around 11:30 p.m. on September 26, 1998, four 16- and 17-year-old girls drove to Young's Park in Overland Park, Kansas. Two of the girls, belonging to a traveling dance troupe, got out of their car and began dancing to show their friends some of their dances. When a car entered the parking lot without its lights on, the girls became scared and returned to their car.

The car was a police cruiser driven by Brian Legg, an Overland Park, Kansas, police officer. After some initial questioning, Legg searched each of the girls. The girls claimed Legg touched them in a sexual fashion by putting his hands on their buttocks, groping them, running his hands over their breasts or cupping their breasts, and touching their crotches. After searching the girls, Legg advised them to leave the area. He then returned to his police cruiser and left the parking lot.

The girls reported the incident to the Overland Park Police Department and identified Legg from a photo lineup.

Internal investigators interviewed Legg about the events at the park, and he gave many different versions of the incident. Initially, Legg denied having any contact with the girls but later admitted being at the park and touching the girls, albeit in a nonsexual manner.

The State charged Legg with four counts of misdemeanor sexual battery, K.S.A. 21-3517. Legg pled nolo contendere to all counts. The trial court sentenced Legg to 1 year of incarceration on each count and ordered the sentences to be served consecutively.

Shortly after sentencing, Legg filed his motion to withdraw the pleas, asserting his due process rights were violated when the pleas were entered. Subsequently, Legg filed a supplemental motion to withdraw his pleas alleging he was not advised by the trial court he would be required to register as a sex offender, pursuant to K.S.A. 22-4901 *et seq*. After a hearing, the trial court rejected each of Legg's claims, and Legg appeals.

Legg contends there is no affirmative showing on the record the nolo contendere pleas were voluntary and understandingly made as required in *Boykin v. Alabama*, 395 U.S. 238, 244, 23 L. Ed. 2d 274, 89 S.Ct. 1709 (1969). This contention presupposes *Boykin's* application to misdemeanor pleas and, therefore, that K.S.A. 1999 Supp. 22-3210(c) is not constitutionally adequate. For the reasons that follow, we will not resolve these issues in this appeal; we simply assume *Boykin* is applicable.

In *Boykin*, the trial judge accepted the defendant's guilty plea to robbery without asking any questions to the defendant regarding his plea or allowing the defendant to address the court. The United

States Supreme Court found plain error where the trial judge accepted a guilty plea without an affirmative showing on the record that the plea was voluntary and understandingly made. 395 U.S. at 242, 244. When personal liberty is at stake in cases of imprisonment, "the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence" is demanded. 395 U.S. at 243-44.

The *Boykin* Court was unwilling to assume that the accused waived his federal constitutional right against compulsory self-incrimination, the right to a jury trial, and the right to confront one's accusers in the face of a silent record. 395 U.S. at 243.

Determining the voluntariness of a plea involves a review of all the relevant circumstances surrounding it. *Brady v. United States*, 397 U.S. 742, 749, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970). Intelligence may be measured by whether the defendant is competent, understands the nature of and consequences of the charges against him, and is represented by competent counsel. 397 U.S. at 756.

"The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." 397 U.S. at 757.

The trial court did not simply accept Legg's pleas but rather conducted a detailed inquiry to insure that the pleas were made knowingly and understandingly. The trial court informed Legg that he was charged with four counts of misdemeanors and that each count carried a maximum penalty of up to 1 year in custody and a fine up to $2,500. The court further inquired into the voluntariness of Legg's pleas by asking Legg his age and education level, if the pleas were discussed with his attorney, his satisfaction with his attorney, and if he was under the influence of alcohol. The trial court was satisfied with Legg's answers and believed he was not under the influence and understood the nature and consequences of the pleas.

Although the trial court did not specifically inquire to see that Legg waived his right against compulsory self-incrimination, the right to a jury trial, and the right to confront one's accusers, under *Brady's* totality of the circumstances analysis, this failure is not fatal. Up until Legg was charged in this case, he served as a police officer and was well acquainted with the rights he was waiving, having read these rights to criminal defendants through *Miranda* warnings.

Legg's nolo contendere pleas were voluntarily and intelligently made under the totality of the circumstances.

Next, Legg argues there was no factual basis for the pleas on the intent element to arouse or satisfy, and whether the defendant was the spouse of all four girls. K.S.A. 21-3517(a) states: "Sexual battery is the intentional touching of the person of another who is 16 or more years of age, who is not the spouse of the offender and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another."

Legg's representation that he might have inadvertently touched the girls' breasts and crotch area during the pat-down search does not mean there was an insufficient showing of a factual basis to support his pleas. After the prosecution's recitation of a factual basis to support the pleas, the trial court asked Legg's counsel if he was satisfied there was a factual basis. Legg's counsel responded, "I believe that if this was to go to trial, the jury heard that evidence, they could very well find Mr. Legg guilty on all four counts." Legg also acknowledged an understanding of the factual recitation before entering his pleas.

The essential element of nonmarriage is implied by a common-sense construction. *State v. Wade*, 244 Kan. 136, 139, 766 P.2d 811 (1989). The record leaves the strong inference that Legg was a stranger to the four girls and met them for the first time in the park. Moreover, it is legally untenable that Legg could be married to all four girls because bigamy is a crime. See K.S.A. 21-3601.

We conclude the trial court did not err in finding there was a factual basis to support each of the charges and Legg's pleas.

Legg also contends a denial of due process because the trial court failed to advise him of the mandatory registration under the

Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.*, as a consequence of his pleas. Legg argues the requirement of registration is a direct penal consequence arising from his pleas.

Sex offender registration is not penal in nature or a direct consequence to a plea. In *State v. Wilkinson*, 269 Kan. 603, 610, 9 P.3d 1 (2000), the Kansas Supreme Court commented on an earlier case involving KORA and stated "the registration requirement imposed no affirmative disability or restraint, and that, while the burden of registering may cause discomfort, the act of registration alone was not punishment." See *State v. Myers*, 260 Kan. 669, 695-96, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118 (1997).

We have previously held a trial court is not required to inform a defendant of the collateral consequences of a plea. *Bussell v. State*, 25 Kan. App. 2d 424, 426, 963 P.2d 1250, *rev. denied* 266 Kan. 1107 (1998).

We conclude the trial court did not err in failing to inform Legg of the registration requirements under the KORA before accepting his pleas.

Affirmed.