No. 87,213

STATE OF KANSAS, *Appellee*, v. ANTONY G. MURIITHI, *Appellant*.

(46 P.3d 1145)

Opinion filed May 31, 2002.

*Teri Canfield-Eye*, legal intern, argued the cause, and *Rebecca E. Hestand* and *Keith L. Whiteford*, legal interns, and *John J. Francis*, supervising attorney, Washburn law clinic, was with her on the briefs for appellant.

*Deborah L. Hughes*, assistant district attorney, argued the cause, and *Robert D. Hecht*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an appeal by Anthony G. Muriithi, a noncitizen, in which defendant's criminal convictions made him deportable. Muriithi appeals from the district court's denial of his motion to withdraw plea and set aside conviction. See *State v. Solomon*, 257 Kan. 212, Syl. ¶ 1, 891 P.2d 407 (1995.) The court transferred the appeal from the Court of Appeals. K.S.A. 20-3018(c).

Muriithi raises the following issues in this appeal: whether counsel's failure to advise Muriithi that he would be deportable as a consequence of his convictions resulted in manifest injustice, whether the trial judge's failure to advise Muriithi of the immigration consequences of his convictions resulted in manifest injustice, and whether Muriithi's pleas were unknowing and involuntary due to the trial judge's failing to advise defendant that he was waiving constitutional rights.

On August 20, 1998, Muriithi pled no contest to one count of domestic battery and one count of endangering a child. The State dismissed two counts of battery, two counts of endangering a child, and one count of intimidation of a witness and recommended probation. One count of endangering a child involved 16-day-old Nathaniel Muriithi.

Muriithi stipulated to the facts contained in the affidavit, which was filed with the complaint. According to the affidavit, Muriithi went to an apartment on the evening of June 30, 1998, where there were three small sleeping children with Dena Yoakum and Sherry Tunstall in one room. Muriithi argued with Yoakum and slapped her. Muriithi lifted and swung Tunstall's 2-year-old girl by her arm. When Tunstall tried to get the child away from him, Muriithi slapped and pushed her. When Tunstall tried to call 911, Muriithi struggled with her, hit her with the telephone, pulled her hair, and grabbed her wrist.

At the plea proceeding, the trial court advised Muriithi that he had "an absolute right to a trial." The trial court also advised Muriithi that at a trial the State would have to prove him guilty beyond a reasonable doubt, that he would have the right to confront wit-

nesses and to subpoena witnesses, that he would have the right to testify but could not be compelled to do so, and that he would have the right to appeal from a guilty verdict.

In addition, Muriithi was informed that the domestic battery count was punishable by a maximum penalty of 6 months in jail and that the endangering a child count was punishable by up to 1 year in jail. Muriithi responded that he understood the possible penalties.

When Muriithi arrived for the plea proceeding without counsel, the trial court suggested that the defendant talk to one of the lawyers in the misdemeanor defense group and stated that counsel would be appointed for him. At the plea proceeding and sentencing, Muriithi was represented by counsel.

After asking that Muriithi be placed on probation so that he could continue supporting his children and pay costs and fees, counsel stated: "To address the question of fees, Judge, as you know, I spoke to Mr. Muriithi very briefly regarding this case and I would ask that you consider either waiving the attorney's fees or at least paroling [*sic*] them down since, really, I really didn't have to do very much, Judge." The sentencing judge placed Muriithi on supervised probation for 12 months.

In March 2000, deportation proceedings against Muriithi, which were based in part on his conviction for domestic battery, concluded with an order that he be removed from the United States to Kenya. A provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) makes any alien deportable if convicted in the United States of a crime of domestic violence. See 8 U.S.C. § 1227(a)(2)(E)(i) (2000). His deportation appeal was dismissed in September 2000. The other basis for deportation, as recited in the decision of the Board of Immigration Appeals, was that he was admitted to the United States as a nonimmigrant student to attend Washburn University beginning in the fall of 1995, but he failed to attend Washburn through December 1999. In his reply brief, Muriithi's appellate counsel asserts that he could have cured his non-student status and he might have avoided deportation if it had not been for the conviction of domestic violence.

In March 2001, the trial judge heard evidence on Muriithi's motion to withdraw his pleas and set aside his convictions. Muriithi testified that, if he had known at the time of the plea proceeding that a conviction of domestic violence would make him deportable, he would not have pled nolo contendere.

At the hearing on Muriithi's motion to withdraw his pleas and set aside his convictions, defense counsel testified that at the time of Muriithi's pleas she was one of a group of four attorneys who contracted with Shawnee County for a set fee to handle all of the misdemeanor appointments. She had no recollection of representing Muriithi, and she did not recognize him. She testified that her practice, when told by a client of immigration status, was to advise the defendant to have his or her case set for trial in order to have time to consult an immigration attorney about any effect a conviction might have.

Muriithi's appellate counsel contends that Muriithi did not receive effective assistance of counsel, that as a result Muriithi's pleas were neither knowing nor voluntary and, hence, unjust, and that his being made deportable as a result of those convictions was manifestly unjust. In addition to the contention that counsel should have advised Muriithi that his convictions would make him deportable, Muriithi also asserts that counsel failed to advise him that a nolo contendere plea results in a conviction and involves waiving constitutional rights.

The court may permit a defendant to withdraw his or her plea of nolo contendere after sentencing if doing so will correct a manifest injustice. K.S.A. 2001 Supp. 22-3210(d). The decision to deny a motion to withdraw a plea lies within the discretion of the trial court, and the trial court's decision will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Shaw*, 259 Kan. 3, Syl. ¶ 2, 910 P.2d 809 (1996). The issue of ineffective assistance of counsel involves mixed questions of fact and law, which are subject to de novo review. *State v. Orr*, 262 Kan. 312, 321, 940 P.2d 42 (1997).

In *Chamberlain v. State*, 236 Kan. 650, 694 P.2d 468 (1985), the court adopted the holdings of *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 *reh. denied* 467 U.S. 1267

(1984), as the standard to be used in determining a claim of ineffective assistance of counsel. In *Hill v. Lockhart*, 474 U.S. 52, 58, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985), the Supreme Court held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." Elaborating on the standard, the Supreme Court stated:

"In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258, 36 L. Ed. 2d 235, 93 S. Ct. 1602 (1973)], and *McMann v. Richardson*, [397 U.S. 759, 25 L. Ed. 2d 763, 90 S. Ct 1441 (1970)]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 58-59.

In *Tollett*, the Supreme Court expressed the view that

"[t]he principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations as well as specialized knowledge of the law." 411 U.S. at 267-68.

Counsel's failure to advise of deportability consequence. Muriithi's counsel met him for the first time on the day he entered his nolo contendere pleas. They talked for approximately 5 to 10 minutes before the plea and sentencing proceeding began. They did not talk about the charges against him. He was not shown the affidavit that had been filed with the complaint. During the plea proceeding, Muriithi's counsel agreed to stipulate to the facts contained in the affidavit. Counsel advised Muriithi to plead nolo contendere to the charges of domestic battery and child endangerment. Counsel did not ask Muriithi whether he was a United States citizen. She did not advise him that he would be made deportable by entering the nolo contendere pleas. Muriithi was not aware that he would be made deportable.

To set aside a plea of nolo contendere on the ground that ineffective assistance of counsel rendered the plea involuntary and the

result was manifestly unjust; a defendant must show that counsel's performance fell below the standard of reasonableness and that there was a reasonable probability that, but for counsel's errors, the defendant would not have entered the plea and would have insisted on going to trial. *State v. Solomon*, 257 Kan. 212, Syl. ¶ 6. With regard to the entry of a nolo contendere plea, defense counsel has an obligation to advise the defendant as to the range of permissible penalties and to discuss the possible choices available to the defendant. 257 Kan. 212, Syl. ¶ 7. Muriithi contends that when a defendant is not a citizen of the United States, defense counsel also has an obligation to advise the defendant of any adverse effect the conviction might have on his or her immigration status.

Muriithi cites *INS v. St. Cyr*, 533 U.S. 289, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001), for the proposition that reasonably competent counsel would have advised him that the conviction would make him deportable. The narrow issue in *St. Cyr* is not related to the present case. The opinion in *St. Cyr* does contain expressions of the Supreme Court's view of counsel's role in criminal proceedings that implicate immigration status, but it is not helpful here. Those comments were made in the context of the narrow issue in *St. Cyr* which was whether § 212(c) of the Immigration and Nationality Act of 1952, which gave the United States Attorney General discretion to waive deportation, remained effective after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and IIRIRA for immigrants made deportable before enactment of the two 1996 acts. See 8 U.S.C. § 1101 *et seq.* (2000); 8 U.S.C. § 1182 (2000). St. Cyr, unlike Muriithi, knew that his plea of guilty in the state court made him deportable. He was relying on the waiver provision in § 212(c). The Supreme Court concluded that the discretionary waiver provision remained available to that certain class of defendants. The Court gave great weight to the "significant and manifest" potential for unfairness in cutting off the possibility of waiver: "Relying upon settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would not foreclose § 212(c) relief, a great number of defendants . . . agreed to plead guilty." 533 U.S. at 323.

Muriithi argues that there are other jurisdictions that recognize the responsibility of counsel to advise alien defendants when they will be made deportable by a conviction. The cases Muriithi cites as holding counsel responsible for advising a defendant of immigration consequences are *United States v. Corona-Maldonado*, 46 F. Supp. 2d 1171 (D. Kan. 1999); *People v. Pozo*, 746 P.2d 523 (Colo. 1987); and *Daley v. State*, 61 Md. App. 486, 487 A.2d 320 (1985). The lessons taught by those cases are not altogether favorable to Muriithi's position. Muriithi concedes, however, that courts in some jurisdictions have concluded that counsel's failing to advise a defendant that he or she will be made deportable will not amount to deprivation of the Sixth Amendment right to the effective assistance of counsel.

In *Corona-Maldonado*, before entering a guilty plea, the defendant made specific inquiry of his attorney about the possibility of being deported for the charged offense. Defense counsel told the defendant that it was not a removable offense and that he would not be returned to Mexico following his release from prison. The court noted that

"[i]t is well settled in the Tenth Circuit that collateral consequences, which are insufficient to support an ineffective assistance of counsel claim, include situations where a defense attorney fails to advise his client of the possibility of deportation. See *Varela [v. Kaiser]*, 976 F.2d [1357,] at 1358 [10th Cir. 1992]" 46 F. Supp. 2d at 1173.

The court, however, distinguished the situation in which a defendant makes specific inquiry about possible deportation and is incorrectly assured that he or she would not be deported based on the conviction. 46 F. Supp. 2d at 1173. It found that the holding in *Downs-Morgan v. United States*, 765 F.2d 1534 (11th Cir. 1985), was sound, where the Eleventh Circuit Court of Appeals

"held that when a defendant is incorrectly told that deportation would not occur, an ineffective assistance of counsel claim may be present. *Downs-Morgan*, 765 F.2d at 1541. The court refused to hold that such misstatements necessarily constituted ineffective assistance of counsel. *Id.* Rather, the court held that a claim may exist and remanded the case for an evidentiary hearing. *Id.*" 46 F. Supp. 2d at 1173.

Following *Downs-Morgan,* the federal district court in the District of Kansas held: "Although an attorney's failure to inform his or her client about the possibility of being deported may not amount to ineffective assistance of counsel, providing incorrect information about being deported following specific inquiry may render the defendant's plea involuntary." 46 F. Supp. 2d at 1173. Noting that Corona-Maldonado chose to plead guilty "[o]nly after being informed that he would not be deported," the court set aside his guilty plea "as it was entered involuntarily." 46 F. Supp. 2d at 1173-74.

There is no claim in the present case that Muriithi made specific inquiry of his defense counsel about being deported if he pled.

In *Pozo,* Jose Borcella Pozo pled guilty to second-degree sexual assault and to escape. Pozo's counsel did not discuss with him the possible deportation consequences of the convictions, and Pozo was not aware that he would be made deportable. The trial court concluded that defense counsel had no duty to advise an alien client of possible deportation consequences and denied Pozo's motion to withdraw his plea. The Court of Appeals concluded that counsel had a duty to advise the client and reversed on the ground that Pozo's counsel breached his duty, thereby denying effective assistance of counsel to his client. Unlike the lower courts, the Colorado Supreme Court was "not prepared" to state its position in absolute terms. 746 P.2d at 527. The majority believed "that the potential deportation consequences of guilty pleas in criminal proceedings brought against alien defendants are material to critical phases of such proceedings." 746 P.2d at 529. The majority held: "The determination of whether the failure to investigate [deportation] consequences [of a guilty plea] constitutes ineffective assistance of counsel [depends] upon whether the attorney had sufficient information to form a reasonable belief that client was in fact an alien." 746 P.2d at 529. The majority concluded that the determinations critical to the disposition of Pozo's claim of ineffective assistance of counsel—whether his counsel had reason to know before the plea was entered that Pozo was an alien and whether counsel's failing to discuss deportation consequences prejudiced Pozo—remained to be made. Thus, the judgment of the Court of

Appeals was reversed and the matter remanded to the trial court for further proceedings. 746 P.2d at 529-30.

Muriithi is not claiming in the present case that determinations critical to the disposition of his claim of ineffective assistance of counsel remain to be made.

In *Daley*, the defendant pled guilty to possession of marijuana. When deportation proceedings were initiated against him after he reentered the country several years after the conviction, he sought to withdraw his plea on the ground that counsel failed to inform him of the possibility of deportation. The trial court denied his motion, and the Court of Special Appeals affirmed primarily because the record did not show that Daley's attorney knew or should have known that he was an alien. 61 Md. App. at 487, 490. In addition, Daley admitted that he knew, even though not told by counsel, that he might be subject to deportation if he failed to obey all laws.

Muriithi contends that there is no question in the present case that his counsel knew or should have known that he was an alien. We disagree. There were two separate proceedings before the court on August 20, 1998. During the proceedings prior to Muriithi's plea proceeding, the trial court asked Muriithi, "Where are you from?", and Muriithi answered, "Kenya." The trial court then asked, "Oh, you are from Kenya?", and Muriithi answered, "Yes." This exchange was not a basis for concluding that counsel knew he was an alien because Muriithi did not mention citizenship. Moreover, it may not be concluded from the record that the courtroom exchange should have alerted defense counsel to make her own inquiry about Muriithi's citizenship. Although counsel was present in the courtroom, she had not yet been appointed as Muriithi's counsel or talked to him. We cannot tell from the record whether counsel overheard the trial court's question and Muriithi's response. The State correctly notes that defense counsel did not necessarily hear the exchange between the trial judge and Muriithi about where he was from. It cannot be reasonably inferred from the "Kenya exchange" that defense counsel was in position to hear what defendant said. The record does not show that Muriithi's counsel knew or should have known that he was an alien. Absent

such showing, Muriithi's counsel had no duty to investigate Muriithi's immigration status.

With regard to Muriithi's independent knowledge of immigration issues, he testified that he did not know that he might be deported for a domestic battery conviction and he did not know enough to ask whether there was any possibility that he would be made deportable. He did, however, know he was not a citizen and never conveyed that fact to his counsel. If not specifically aware of the immigration consequences, he was aware of his immigration status and should have known that a criminal violation could impact his status in this country.

With regard to prejudice, Muriithi was asked, "If you had known at that time that entering a plea of no contest could subject you to deportation, would you still plead no contest today?" Muriithi answered, "No, I would not." The State urges the court, on the subject of prejudice, not to lose sight of the fact that were Muriithi to be tried it would be on seven counts rather than two. The State would also have the court note that Muriithi's deportation was not based solely on his convictions. The decision of the Board of Immigration Appeals shows that in addition to being charged with a conviction of domestic battery he was charged with violating conditions of his nonimmigrant student status by failing to attend Washburn from the fall semester 1995 through December 3, 1999. There is nothing in the decision to indicate that Muriithi offered any defense to the charge of violating his nonimmigrant student status.

Muriithi relies on *Corona-Maldonado*, *Pozo*, and *Daley*, which would entertain a Sixth Amendment claim for failing to advise of immigration consequences in certain circumstances. He concedes that courts in some jurisdictions have concluded that counsel's failing to advise a defendant that he or she will be made deportable will not amount to deprivation of the Sixth Amendment right to the effective assistance of counsel.

In fact, the general rule seems to be that deportation consequences are considered a collateral consequence of a criminal proceeding. In *Santos v. Kolb*, 880 F.2d 941, 944 (7th Cir. 1989), *cert.*

*denied* 493 U.S. 1059 (1990), the court polled several federal Circuit Courts of Appeals:

"Various circuits have addressed the issue of failure of counsel to inform an accused of the likely deportation consequences arising out of a guilty plea, and have determined that deportation is a collateral consequence of the criminal proceeding and therefore no ineffective assistance of counsel was found. *United States v. Yearwood*, 863 F.2d 6 (4th Cir. 1988); *United States v. Campbell*, 778 F.2d 764 (11th Cir. 1985); *United States v. Gavilan*, 761 F.2d 226 (5th Cir. 1985); *United States v. Santelises*, 509 F.2d 703 (2d Cir. 1975). *But see Janvier v. United States*, 793 F.2d 449 (2d Cir. 1986)." 880 F. 2d at 944.

The Seventh Circuit Court of Appeals concluded: "The failure of petitioner's counsel to inform him of the immigration consequences of his guilty plea, however unfortunate it might be, simply does not deprive petitioner of the effective assistance of counsel guaranteed by the Constitution." 880 F. 2d at 945. In the more recent case of *Varela v. Kaiser*, 976 F. 2d 1357, 1358 (10th Cir. 1992), the Tenth Circuit Court of Appeals stated:

"The circuits that have addressed the issue of failure of counsel to inform an accused of the likely deportation consequences arising out of a guilty plea have all held that deportation is a collateral consequence of the criminal proceeding and therefore the failure to advise does not amount to ineffective assistance of counsel."

In addition to *Santos* and the cases cited in it, the Tenth Circuit cited *United States v. George*, 869 F. 2d 333 (7th Cir. 1989), and *United States v. DeFreitas*, 865 F. 2d 80 (4th Cir. 1989), as their authority for that statement. States are free to impose whatever specific rules they see fit to ensure that criminal defendants are well represented. *Roe v. Flores-Ortega*, 528 U.S. 470, 479, 145 L. Ed. 2d 985, 120 S. Ct. 1029 (2000). Neither the legislature nor the courts of this state have shown any inclination to deviate from the case-by-case reasonableness standard of *Strickland* and *Chamberlain.* We conclude that here the failure to advise Muriithi of the deportation consequences does not amount to ineffective assistance of counsel, rendering his plea manifestly unjust.

    <u>Totality of the circumstances.</u> The voluntariness of a plea can be determined only by considering all of the relevant circumstances surrounding it. *Brady v. United States*, 397 U.S. 742, 749, 25 L.

Ed. 2d 747, 90 S. Ct. 1463 (1970). Muriithi brings to the court's attention circumstances in addition to the lack of information on deportation. He asserts that counsel failed to advise him that a nolo contendere plea would result in a conviction. Counsel testified that she has no recollection of representing Muriithi. She described her custom:

"I would have explained to him the difference between a guilty plea, a no contest plea and an Alford plea and make sure that he understood what the difference was and the fact whether he pled guilty or no contest that he would ultimately be found guilty on a no contest plea."

Muriithi contends that he was not told that by pleading nolo contendere he was admitting the factual basis for a finding of guilt. In addition, Muriithi stated several times during his hearing testimony that he did not understand that his pleas would result in convictions. In response to the question "And do you feel that you should have been advised about deportation consequences?", he said, "Yes, because I should have been told I was being convicted." He further stated that he did not know that he "was getting convicted," and that he thought probation was the same as diversion. Examination of the transcripts of the plea proceeding and the proceedings before the plea proceeding reveals no mention of Muriithi's being convicted and no explanation of probation. Interestingly, Muriithi knew the intricacies of diversion but not the effect of a nolo contendere plea or probation.

Muriithi contends that he was not told that his pleas would involve waiving constitutional rights. The trial court advised Muriithi of the following rights, and Muriithi stated that he understood them: an absolute right to a trial, at which the State must prove his guilt beyond a reasonable doubt, at which he would have the right to confront and cross-examine the State's witnesses, at which he would have the right to subpoena witnesses, and at which he would have a right to testify but could not be compelled to do so. He was also advised of the penalty for the two charges to which he pled. Muriithi was not advised that by pleading nolo contendere he would be waiving his trial rights. However, that obviously was the purpose of accepting the State's offer and entering a plea. We

cannot say the trial court abused its discretion based upon counsel's representation or upon the totality of the circumstances.

Trial judge's failure to advise of immigration consequences. All persons within the United States, including aliens, are protected from the deprivation of life, liberty, or property without due process. *Mathews v. Diaz*, 426 U.S. 67, 77, 48 L. Ed. 2d 478, 96 S. Ct. 1883 (1976). Muriithi argues that his due process rights were violated during the plea proceeding when the trial court did not inform him that he would be made deportable.

K.S.A. 2001 Supp. 22-3210 "embodies the due process requirements as interpreted by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969)." See *Noble v. State*, 240 Kan. 162, 163, 727 P.2d 473 (1986). With regard to pleas of guilty or nolo contendere to misdemeanor charges, the statutes provide only that a plea may be accepted when the court is satisfied that there is a factual basis for the plea and the court may allow the defendant to appear and plead by counsel. K.S.A. 2001 Supp. 22-3210(a)(4) and (c). In felony cases, the trial court must inform "the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea." K.S.A. 2001 Supp. 22-3210(a)(2). It is not apparent from the case law that Kansas courts distinguish between felony and other cases for requiring advice of plea consequences. See, *e.g., City of Ottawa v. Lester*, 16 Kan. App. 2d 244, 822 P.2d 72 (1991) (DUI).

Kansas courts' application of the requirement of advising of plea consequences distinguishes between direct penal consequences and collateral consequences. In *Bussell v. State*, 25 Kan. App. 2d 424, 963 P.2d 1250, *rev. denied* 266 Kan. 1107 (1998), the defendant pled guilty to five counts of aggravated incest in exchange for the State's dismissal of six more counts of the same offense. The trial court denied Bussell's motion to withdraw his plea, and the Court of Appeals affirmed. He argued that his plea was involuntary and manifestly unjust because the trial court and his attorney failed to advise him about the Kansas Sexually Violent Preda-

tors Act (KSVPA), K.S.A. 59-29a01 *et seq.*, and the possibility that it would be applied to him. On the ground that potential application of the KSVPA is a collateral consequence of a plea to a sex crime, the Court of Appeals concluded that a trial court is not required in a sex crime case to advise the defendant about it. 25 Kan. App. 2d at 427. The Court of Appeals distinguished between potential and certain consequences in determining which the trial court was required to advise the defendant of:

> "In this state, the trial court is only required to inform a defendant of the consequence of his plea of guilty if that consequence is definite, immediate, and almost automatic as a result of his guilty plea. [*City of Ottawa v. Lester,*]16 Kan. App. 2d [244,] at 248, [822 P.2d 72 (1991)]. In the instant matter, there is nothing definite or automatic or immediate about the possible application of the KSVPA. The trial court was not required to advise this defendant of the possibility that the KSVPA *might* be invoked against him at some time in the future." 25 Kan. App. 2d at 427.

With regard to counsel's role, the Court of Appeals reiterated that counsel is required to discuss possible criminal sanctions with defendant. The potential of civil proceedings under the KSVPA, however, may be omitted from the discussion without counsel's breaching the standard of reasonableness. "The uncertainty inherent in predicting whether the KSVPA will ever by invoked against defendant is such that the failure of his counsel to advise him of potential consequences cannot be said to be constitutionally deficient." 25 Kan. App. 2d at 428. The Court of Appeals also expressed the view that defendant had not shown that the result would have been different had he been advised about the KSVPA. 25 Kan. App. 2d at 428-29.

*Bussell* is representative of a line of Kansas plea-withdrawal cases that consider what consequences the trial court must inform a defendant of. In *Cox v. State*, 16 Kan. App. 2d 128, Syl. ¶ 1, 819 P.2d 1241 (1991), *rev. denied* 250 Kan. 804 (1992), the Court of Appeals stated:

> "Under K.S.A. 22-3210, a trial court is required to inform the defendant of the direct penal consequences of a guilty plea before accepting the guilty plea. The trial court is not required to inform a defendant of the collateral consequences of a guilty plea, including the loss of certain civil rights or privileges."

Defendant's parole eligibility and loss of unspecified civil rights were held to be collateral consequences. In *City of Ottawa*, 16 Kan. App. 2d 244, Syl. ¶ ¶ 2 and 3, the principle that the trial court need not inform a defendant of the collateral consequences of a guilty plea was reiterated, and suspension of defendant's driving privileges was held to be a collateral consequence. In *In re J.C.*, 260 Kan. 851, 925 P.2d 415 (1996), the familiar principle was applied, and the court concluded that the possibility that a plea may be used to enhance the sentence for a later crime is a collateral consequence. The court stated that "[s]uch a consequence is not definite, immediate, or automatic but rather only speculative." 260 Kan. 851, Syl. ¶ 2. In *State v. Legg*, 28 Kan. App. 2d 203, 13 P.3d 355 (2000), *rev. denied* 270 Kan. 901 (2001), the familiar principle was applied, and the Court of Appeals concluded that the mandatory registration under the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq.*, was a collateral consequence because sex offender registration is not penal in nature and imposes no affirmative disability or restraint. 28 Kan. App. 2d at 207.

Muriithi would distinguish Kansas cases, *particularly Bussell,* from the present case on the ground that the adverse immigration consequences of his plea were definite, immediate, and almost automatic. 8 U.S.C. § 1227(a)(2)(E)(i) (2000) makes "[a]ny alien who at any time after admission is convicted of a crime of domestic violence . . . deportable." Deportation follows upon a finding, at the conclusion of a removal proceeding, that the alien failed to prove by clear and convincing evidence that he or she is lawfully present in the United States. 8 U.S.C. § 1229a(c) (2000). An unanswered question is the likelihood that a removal proceeding will follow a conviction on a deportable offense. Once a removal proceeding is underway, deportation would seem to be nearly inevitable due to the hurdle of establishing lawful presence in this country for an alien who has pled guilty to an offense that made him or her deportable.

The Kansas Legislature has not yet acted to reduce or eliminate the possibility that an alien defendant will plead guilty or nolo contendere without being aware that there might be severe immigration consequences. In the absence of protective legislation in this

state, Muriithi urges the court to reserve the direct/collateral-consequences analysis for the pleas of United States citizens. He contends that deportation is such a severe consequence that it ought to be in a separate category. Many states have created separate statutory treatment for immigration consequences of criminal pleas. Federal courts have expressed the view that immigration consequences are so severe as to merit particularized treatment.

Deportation is a collateral consequence of a plea to a criminal charge. We see no valid reason to distinguish the collateral consequence of deportation from the collateral consequences at issue in the Kansas cases previously noted. Absent a statute requiring the trial court to do so, it has no duty to advise a defendant of the immigration consequences of a plea of nolo contendere to a misdemeanor charge.

Muriithi's final argument is based on the trial judge's failing to advise him that he was waiving constitutional rights. K.S.A. 2001 Supp. 22-3210(c) does not expressly require the trial court to inform a misdemeanant of anything. The statute does not even expressly require that the misdemeanant be present for a plea: "In traffic infraction, cigarette or tobacco infraction and misdemeanor cases the court may allow the defendant to appear and plead by counsel." K.S.A. 2001 Supp. 22-3210(c).

In *Legg*, the Court of Appeals stated, with regard to Legg's argument that his nolo contendere pleas to four misdemeanor counts were not voluntary as required by *Boykin v. Alabama*, 395 U.S. at 244: "This contention presupposes *Boykin's* application to misdemeanor pleas and, therefore, that K.S.A. 1999 Supp. 22-3210(c) is not constitutionally adequate. For the reasons that follow, we will not resolve these issues in this appeal; we simply assume *Boykin* is applicable." 28 Kan. App. 2d at 204.

Following the lead of the Court of Appeals and assuming that *Boykin* is applicable to Muriithi's nolo contendere pleas to Class A and B misdemeanor charges, we examine the transcript of the plea proceeding to determine whether the pleas were knowingly and voluntarily made. There was a factual basis for the pleas in the affidavit of the prosecuting attorney, to which the defendant stipulated. He was told that he had an absolute right to a trial where

the State would have to prove his guilt beyond a reasonable doubt, where he would have the right to confront the State's witnesses and subpoena his own witnesses. He was also told that if he went to trial he would have an absolute right to appeal. Muriithi stated that he understood "all of those rights." He was informed of the charges and penalties. He was represented by counsel. Muriithi complains, however, that he was not informed that he would be giving up the rights that accompany a trial. Muriithi is well educated and fluent in English. It should have been self-evident to Muriithi that trial rights are exclusive to trials.

Affirmed.