NOT DESIGNATED FOR PUBLICATION

No. 117,001

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CRISTIAN V. GUDIEL,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed October 13, 2017. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Adam Sokoloff*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., PIERRON and GREEN, JJ.


PER CURIAM: When a defendant seeks to withdraw a guilty plea after sentencing, he or she must establish that such action is necessary to prevent a manifest injustice. K.S.A. 2016 Supp. 22-3210(d)(2). Ineffective or deficient performance of counsel may give rise to a finding of manifest injustice if the defendant is able to show that trial counsel's performance fell below the objective standard of reasonableness and there is a reasonable probability that but for trial counsel's errors, the result of the proceeding would have been different. *State v. Bricker*, 292 Kan. 239, 245-46, 252 P.3d 118 (2011). Cristian Gudiel appeals the district court's order denying his motion to withdraw his

1

guilty plea based upon his lack of awareness of the possible immigration consequences for his conviction. The district court denied Gudiel's motion. On appeal, Gudiel maintains that if allowed to withdraw his guilty plea he will reenter a guilty plea and seek a downward durational departure sentence which, if granted, may result in more favorable consideration by immigration authorities. Because we find that Gudiel's counsel was not ineffective for failure to inquire regarding his immigration status and, moreover, even if he was, Gudiel has not met his burden to show that there is a reasonable probability that but for counsel's errors the result would be different, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Gudiel pled guilty as charged to one count of aggravated assault and was sentenced to a 13-month prison term and 12 months' postrelease supervision. See K.S.A. 2016 Supp. 21-5412(b)(1). He was given credit for time served and later released from the Kansas Department of Corrections. After his release, Gudiel was taken into custody by immigration authorities. Gudiel filed a timely motion to set aside his guilty plea because he had not been adequately advised regarding possible immigration consequences of his guilty plea. The district court held a hearing to determine if a postconviction withdrawal of plea was warranted.

At the hearing it was undisputed that Gudiel was from Guatemala and had been living in the United States since he was seven years old. At the time of his plea Gudiel was 29 years old. Prior to his guilty plea, Gudiel and his counsel had not discussed Gudiel's immigration status or the possible immigration consequences of a guilty plea. Further, possible immigration consequences were not mentioned in the petition to enter a plea of guilty or at the plea hearing. It appears that the plea petition was an older version that did not contain language mentioning immigration concerns. Gudiel also maintained that he would have pled guilty as charged even knowing the possible immigration

2

consequences but that he would have argued for a departure sentence to obtain a sentence less than the minimum 12 months.

The district court denied Gudiel's motion. The court found that Gudiel's counsel was not ineffective. Further, it found that Gudiel was not prejudiced due to his desire to enter a plea of guilty regardless of the consequences on his immigration status. Finally, the district court found it unlikely that a "'more creative plea'" was reasonably foreseeable under the circumstances of the case. Therefore, the district court order denied the motion to set aside plea, and Gudiel timely appeals from that order.

ANALYSIS

Gudiel argues that his trial counsel was ineffective by failing to inquire into Gudiel's immigration status, failing to properly inform Gudiel of possible immigration consequences to his plea, and that counsel's failure to do so was prejudicial to Gudiel.

*Our standard of review is abuse of discretion.*

The court's standard of review of a denial of postsentencing motion to withdraw plea is abuse of discretion. *State v. Morris*, 298 Kan. 1091, 1100, 319 P.3d 539 (2014). A judicial action constitutes an abuse of discretion if (1) no reasonable person would have taken the view adopted by the trial court; (2) if the judicial action is based on an error of law; or (3) if the judicial action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

A claim of ineffective assistance of trial counsel is a mixed question of law and fact requiring de novo review. *Thompson v. State*, 293 Kan. 704, 715, 270 P.3d 1089 (2011).

*Gudiel may withdraw his plea if he is able to establish manifest injustice.*

When a defendant seeks to withdraw a guilty plea after sentencing, he or she must establish that such action is necessary to prevent manifest injustice. K.S.A. 2016 Supp. 22-3210(d)(2). To find manifest injustice, Kansas courts review at least three factors: "'(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.'" *Morris*, 298 Kan. at 1100-01. Gudiel argues that his trial counsel's failure to inform him of possible immigration consequences of a guilty plea made his representation ineffective.

To show manifest injustice due to ineffective assistance of counsel Gudiel must meet the constitutional standards set out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Bricker*, 292 Kan. at 245-46. Gudiel must show, by a preponderance of the evidence, that: (1) trial counsel's performance fell below the objective standard of reasonableness and (2) there is a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *Bricker*, 292 Kan. at 245-46.

*Counsel's performance did not fall below the objective standard of reasonableness.*

Under the first prong, Gudiel must show that trial counsel's performance was below the objective standard of reasonableness. Gudiel primarily relies on *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), to show that trial counsel was ineffective by failing to inquire into Gudiel's immigration status. *Padilla* links the standard of reasonableness to the practice and expectations of the legal community. The Court in *Padilla* noted that prevailing norms require counsel to inform clients about the risk of deportation. 559 U.S. at 367. However, the situation in *Padilla* is different than here. Padilla was facing mandatory deportation. Padilla's counsel knew

4

Padilla was not a citizen of the United States and incorrectly advised Padilla that he would not need to worry about deportation. Under those circumstances, the Court found that Padilla's counsel was constitutionally ineffective. 559 U.S. at 359-60.

There does not appear to be a published opinion, post-*Padilla*, from the United States Supreme Court, Kansas Supreme Court, or Kansas Court of Appeals regarding whether counsel is required to inquire about the immigration status of a client. In *State v. Muriithi*, 273 Kan. 952, 960-61, 46 P.3d 1145 (2002), *superseded by Padilla*, 559 U.S. 356, the court found that when counsel did not know or have reason to know that the client was an alien there was no duty to investigate the client's immigration status. While *Muriithi* was largely superseded by *Padilla*, this court has stated that the test in *Muriithi* is still applicable to determine whether counsel was ineffective. *State v. Limarco*, No. 101,506, 2010 WL 3211674, at *5 (Kan. App. 2010) (unpublished opinion).

This court has addressed the issue in a number of unpublished opinions. In *State v. Rodriguez*, No. 108,505, 2014 WL 1096553, at *10-12 (Kan. App. 2014) (unpublished opinion), this court used the *Muriithi* test to determine whether counsel has a duty to inquire into the immigration status of a client. Rodriguez pled no contest to one count of abuse of a child. He filed several motions to withdraw his plea, including one which alleged that his trial counsel did not inform him of the immigration consequences of his plea. This court applied the *Muriithi* test and found that Rodriguez' trial counsel did not know or have reason to know that Rodriguez was an undocumented alien prior to the entry of the no contest plea. The court held that an attorney has no duty to discuss the immigration consequences of a plea under *Padilla* when the attorney has no reason to know his or her client is an undocumented alien. Therefore, Rodriguez failed to show that manifest injustice existed, requiring the district court to grant his motion to withdraw his plea under K.S.A. 2013 Supp. 22-3210(d)(2). *Rodriguez*, 2014 WL 1096553, at *11.

This court has also addressed a similar situation in the context of a K.S.A. 60-1507 motion. In *Hernandez v. State*, No. 107,069, 2013 WL 2395302 (Kan. App. 2013) (unpublished opinion), Hernandez was facing immigration consequences after pleading guilty to distribution of cocaine. Hernandez was approximately 33 years old at the time of the hearing and had been living in the United States for about 25 years. Hernandez spoke fluent English and had been represented by his counsel in a number of other matters. Hernandez had not told his attorney that he was a resident alien, and his counsel assumed Hernandez was a citizen. In the court's analysis of whether Hernandez' counsel was ineffective it found that the record indicated that Hernandez' counsel had no reason to presume that Hernandez was not a citizen. The court stated:

> "[W]e are not prepared to say that a criminal defense lawyer has an obligation to ask a client about his or her immigration status or citizenship simply because the person has a recognizably ethnic name or a Hispanic name. Nor are we prepared to say a lawyer must ask every client about his or her immigration status or citizenship." 2013 WL 2395302, at *3.

The court went on to assume without deciding that counsel had a duty to inquire about Hernandez' immigration status and discuss possible immigration issues that would result as part of the plea. The court ultimately reached its decision on the prejudice prong of the competency of counsel test, finding that Hernandez was not prejudiced. 2013 WL 2395302, at *3-4.

The district court in this case also relied on *State v. Stephens*, 46 Kan. App. 2d 853, 265 P.3d 574 (2011). Stephens attempted to withdraw his plea claiming that his counsel was ineffective because his counsel told him that he had only two prior misdemeanor convictions and would receive probation at sentencing. Stephens had additional undisclosed misdemeanors in Colorado, which increased his criminal history score. Stephens' counsel testified that he had relied on information provided to him by Stephens regarding prior convictions when advising Stephens. On appeal this court

6

upheld the denial of the motion to withdraw the plea stating that *Padilla* did not require attorneys to ignore their client's statements regarding past crimes and to conduct an independent investigation. Further, the court stated that *Padilla* did not require counsel to investigate the citizenship or immigration status of every client in a criminal case. *Stephens*, 46 Kan. App. 2d at 856.

In this case Gudiel's counsel had no knowledge that Gudiel was not a United States citizen. Gudiel had lived in the United States since he was seven years old. At the time of his plea and sentencing Gudiel was 29 years old. Accordingly, he had been living in the United States for at least 21 years. Gudiel did not tell his counsel that he was from Guatemala. The presentence investigation report indicates that Gudiel is a United States citizen and has a social security number. It appears that the only indication that Gudiel's counsel had of a possible immigration issue was Gudiel's name and the fact that he is Hispanic. Gudiel's trial counsel acknowledged that he should have mentioned immigration consequences when he had a Hispanic client and that it should have also been in the plea petition. In the hearing on Gudiel's motion the State indicates that Gudiel's financial affidavit for appointment of counsel provides no clues that Gudiel was a noncitizen; however, it does not appear that the affidavit has been made a part of the record on appeal. Based on the record provided it does not appear that Gudiel's counsel knew or should have known that Gudiel was a noncitizen.

Based on the current state of the law, if Gudiel's counsel did not know or should not have known that Gudiel was a noncitizen, counsel was not constitutionally ineffective in failing to advise Gudiel of possible immigration consequences.

*There is not a reasonable probability that but for trial counsel's errors, the result of the proceeding would have been different.*

Even if we assume, without deciding, that Gudiel's counsel was ineffective for not asking about his immigration status, our analysis does not end. In order to find counsel constitutionally ineffective, the court must also find that the defendant was prejudiced by counsel's claimed ineffectiveness. To show prejudice the defendant must show a "'reasonable probability that but for [counsel's] errors, the result of the proceeding would have been different.'" *Morris*, 298 Kan. at 1103 (quoting *Bricker*, 292 Kan. at 245-46). "'A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *Morris*, 298 Kan. at 1103; *Bricker*, 292 Kan. at 245-46.

In *Rodriguez*, the court stated that even had counsel been ineffective, Rodriguez had not shown the required prejudice to warrant reversal. 2014 WL 1096553, at *11. Rodriguez testified that had he known about the immigration consequences of his plea he would have taken the case to trial. However, the district court did not believe Rodriguez' claim. This court reasoned that it was not in a position to second-guess Rodriguez' credibility. Therefore, this court found that Rodriguez had failed to show ineffective counsel and manifest injustice and affirmed the district court. 2014 WL 1096553, at *11.

In *Hernandez*, the court assumed without deciding that counsel had a duty to ask about Hernandez' immigration status and discuss possible ramifications of the plea. This court found that Hernandez failed to show prejudice. 2013 WL 2395302, at *3. Counsel learned about Hernandez' status as a noncitizen after the plea hearing and discussed the implications of asking to set aside the plea with Hernandez. Hernandez indicated that he would continue with the plea and deal with immigration issues as they arose. In his K.S.A. 60-1507 proceedings, Hernandez did not assert that he would have gone to trial on the original charges or that he had a defense that could have led to acquittal. Therefore,

8

this court found that Hernandez failed to show the required prejudice and affirmed the district court decision. 2013 WL 2395302, at *3-4.

In contrast, in *State v. Ramos-Mejia*, No. 109,250, 2014 WL 278778, at *5 (Kan. App. 2014) (unpublished opinion), this court found that Ramos-Mejia showed the required prejudice. Ramos-Mejia pled no contest to misdemeanor battery and attempted aggravated assault on a law enforcement officer with a deadly weapon, a felony. Prior to his plea his trial counsel informed him that his plea *could* impact his immigration status. See *Ramos-Mejia*, 2014 WL 278778, at *2. Ramos-Mejia was sentenced and later moved to withdraw his plea, alleging that his trial attorney had not properly advised him of the impact the plea would have on his immigration status. The district court denied the motion, and Ramos-Mejia appealed. This court found that Ramos-Mejia's trial counsel's performance fell below the objective standard of reasonableness when she incorrectly explained the risk of deportation. This court then found that Ramos-Mejia was prejudiced because Ramos-Mejia indicated that had he known of the deportation consequences he would not have entered the plea. Ramos-Mejia could have gone to trial, or as this court considered, entered into a "more creatively structured plea" which could reduce the likelihood of deportation. *Ramos-Mejia*, 2014 WL 278778, at *5. Therefore, this court reversed the district court's denial of Ramos-Mejia's motion to withdraw his plea.

In this case Gudiel's counsel indicated that even had Gudiel known of the possible immigration consequences, he still would have accepted responsibility for his actions and pled guilty as charged. He then would have asked for a downward durational departure from 13 months to 11 months and 29 days, so as not to have his conviction classified by federal immigration authorities as an aggravated felony, subjecting him to deportation under federal immigration law. See 8 U.S.C. § 1227(a)(2)(A)(iii) (2012); 8 U.S.C. § 1101(a)(43)(F) (2012) (aggravated felony is a crime of violence with a term of imprisonment of at least one year). Gudiel agreed with his counsel's statement. The district court in its order stated that a creative plea was not reasonably foreseeable under

9

the facts of this case. The court did say that it was not impossible that a different plea agreement could have been reached, but it found that a different plea agreement was unlikely.

We first believe it is important to note that the same judge heard Gudiel's motion to set aside his plea as accepted his guilty plea and sentenced him. So the judge was familiar with the facts of the crime and the criminal history of Gudiel. Gudiel was a criminal history H and committed a severity level 7 person felony crime. This placed him in a presumptive probation sentencing box under the revised Kansas Sentencing Guidelines Act. K.S.A 2016 Supp. 21-6804. He faced a maximum presumptive sentence of 14 months, a standard sentence of 13 months, and a mitigated sentence of 12 months. However, there was a special finding that a firearm was used in the commission of the crime. This changed his sentence to presumptive prison. K.S.A. 2016 Supp. 21-6804(h). The statute does allow the court to order probation when a firearm is used if it makes certain findings under K.S.A. 2016 Supp. 21-6804(q) (treatment program appropriate and available or community safety interests will be served by promoting offender reformation). In this case, Gudiel asked the judge to impose probation. The judge refused, finding that the circumstances of the case—Gudiel pointed a gun at a random victim who had three small children in the car—did not warrant it. The same judge that made those findings, found that, in essence, a lesser sentence would not be "reasonably foreseeable under the facts of this case."

Moreover, for the court to impose a sentence of less than 12 months the court would have to find substantial and compelling reasons to impose a downward durational departure from Gudiel's presumptive sentence. K.S.A. 2016 Supp. 21-6815(a). Although not addressed in any Kansas appellate decision, it is unlikely that an attempt to avoid federal immigration law would be a valid basis for a downward durational departure. See *State v. Peter*, 825 N.W.2d 126, 131 (Minn. App. 2012) (rejected downward durational departure to avoid federal deportation policies).

10

In sum, Gudiel must show by a preponderance of the evidence that he was prejudiced by his attorney's failure to advise him that his sentence may cause his deportation under federal immigration law. Under the facts of this case, given (1) Gudiel's insistence that he would not have sought a trial and still pled guilty as charged; (2) the comments by the judge at the time of his sentencing indicating that probation was not appropriate; and (3) the fact that the sentencing judge indicated he did not believe that a lesser sentence would be "reasonably foreseeable under the facts of this case," Gudiel fails to show the required prejudice.

Because Gudiel's counsel was not ineffective, and even if he was, Gudiel has not established prejudice, the district court did not abuse its discretion in denying Gudiel's motion to withdraw his plea.

Affirmed.