IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 3, 2008 Session

## MARCUS WARD v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-06910     Paula Skahan, Judge**

**No. W2007-01632-CCA-R3-PC  - Filed January 14, 2009**

In 2005, the petitioner, Marcus Ward, pled guilty to three counts of aggravated assault and one count each of especially aggravated kidnapping, intentionally evading arrest in a motor vehicle, and aggravated sexual battery and received an effective sentence of thirteen and one-half years. No direct appeal was taken. Subsequently, he filed a petition for post-conviction relief, alleging that his guilty pleas were not knowingly, intelligently, and voluntarily made and that he received the ineffective assistance of counsel. Following an evidentiary hearing, the post-conviction court denied the petition. This appeal is only as to his conviction for aggravated sexual battery, with the petitioner asserting that trial counsel rendered ineffective assistance by not informing him that registration as a sexual offender was a consequence of his guilty pleas, the trial court committed plain error by not informing him of this registration requirement, and the post-conviction court erred in finding that the registration requirement was a "collateral," rather than direct, consequence of his pleas. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined. JOSEPH M. TIPTON, P.J., filed a dissenting opinion.

Ryan B. Feeney, Selmer, Tennessee, for the appellant, Marcus Ward.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Colin Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

At the petitioner's guilty plea hearing, the State summarized the proof it would have presented at trial:

Had these matters gone to trial the facts would have been that on June 15th, 2004, officers responded to an armed robbery call . . . in which the [petitioner], who was driving a 2000 Cadillac Escalade, tan in color, was broadcast . . . to the responding cars. Sergeant Ware, while en route to the scene, observed the vehicle going northbound on Riverdale. Officers then attempted to stop the vehicle in which the [petitioner] was in but refused to stop. Officers continued to follow [petitioner's] vehicle for a while. The [petitioner] stopped his vehicle at 385 Byhalia Road, here in Shelby County, where he was placed under arrest.

Victim number 1, . . ., was located in the front seat of the [petitioner's] vehicle at the time of his arrest. Officers also located a small black and white handgun in the back of the passenger's side seat.

. . . [V]ictim number 2 advised that [the petitioner] threatened her while he was in the examining room. . . . [V]ictim number 3 advised that [the petitioner] forced him out of his office with a gun before he took [victim number 1] hostage. . . . [V]ictim number 4 stated that [the petitioner] grabbed her by the arm and pointed the gun at her. He also pushed her out of the examining room.

[The petitioner] was brought to felony response office where he gave a statement of admission to these, to this offense. Those would be the facts had this matter gone to trial.

We note that, as to the conviction for especially aggravated kidnapping, the petitioner pled guilty as a mitigated offender to a sentence of thirteen and one-half years at 100 percent.

In 2005, the petitioner filed a *pro se* "Motion for Correction or Reduction of Sentence and/or Post Conviction." Counsel was appointed, and in 2007 the petitioner filed an amended and supplemental petition for post-conviction relief, alleging that he was not mentally competent at the time of his guilty plea and that trial counsel and the trial court did not inform him that registration as a sexual offender was a consequence of his guilty plea to aggravated sexual battery. He also alleged that trial counsel provided ineffective assistance by not contesting the trial court's finding that he was competent to stand trial, not advising him of "the full measure of punishment for the crime of aggravated sexual battery," not informing him that he would be required to serve 100 percent of his sentence for aggravated sexual battery and would be subjected to lifelong community supervision, and "in general fail[ing] to know and/or be governed by the American Bar Association's standards."

At the evidentiary hearing, trial counsel testified that he had practiced law in Tennessee since November 2000. During his representation, counsel learned that the petitioner had mental problems, so he requested a mental examination and obtained the petitioner's medical records. Counsel's review of the medical records revealed that the petitioner suffered from depression and an unspecified psychotic disorder and had been prescribed Prozac and Haldol. Following the initial

medical examination, questions about the petitioner's ability to assist in his defense arose, and a thirty-day evaluation was ordered. The conclusion of this evaluation was that the petitioner could appreciate the wrongfulness and nature of the crime at the time of the offenses and was competent to stand trial. Counsel testified that he was aware he could request a competency hearing, but he did not do so because he had no evidence to contradict the determination that the petitioner was competent. He stated that he asked the petitioner if he was having auditory or visual hallucinations at the time of the offenses, and the petitioner replied that he had not. Counsel testified that he was considering hiring an independent expert to evaluate the petitioner's competency when the petitioner elected to accept the State's plea offer.

Trial counsel recalled that he informed the petitioner that his sentences for especially aggravated kidnapping and aggravated sexual battery were violent crimes which required 100 percent service. He testified that it was his normal practice to inform clients who pled guilty to sexual offenses that they would be required to register as a sexual offender; however, he testified that he did not have any independent memory of explaining this to the petitioner.

Trial counsel testified he filled out the petitioner's judgment sheet for aggravated sexual battery and acknowledged that at one point he had checked the box for thirty percent release eligibility. He stated that this was a clerical error and that he subsequently changed the form to reflect 100 percent service, although he could not recall when he made this change. Additionally, counsel could not recall whether the petitioner signed the judgment form before or after the correction was made or whether he informed the petitioner of the change. Counsel testified the trial court did not inform the petitioner that he was required to register as a sexual offender and undergo lifetime monitoring which, in his opinion, should have been a part of the plea colloquy.

On cross-examination, trial counsel testified there was "no doubt" in his mind that the petitioner was competent to assist in the preparation of his defense. He stated that he discussed with the petitioner his statement to the police and explained to him the elements of each offense and the potential ranges and manners of service of his sentences.

The petitioner testified that he met with trial counsel "[a]bout four times" prior to entering his pleas. He said that he believed his only option was to plead guilty because trial counsel did not adequately prepare for trial. He testified that his understanding was that the aggravated sexual battery and especially aggravated kidnapping sentences would be served at thirty percent release eligibility. He said he was not consulted regarding the amendment of the judgment form for aggravated sexual battery and, when he signed the form, was not told that he would have to give a DNA sample and be subject to lifelong community supervision. He testified that he would not have pled guilty if he had been told that he would have to register as a sexual offender and serve 100 percent of his sentences.

Additionally, the petitioner said that he had suffered from auditory and visual hallucinations and depression since he was about seven years old and took Haldol and Prozac for these conditions. He stated that he never discussed with trial counsel defenses based on insanity or mental defect. He

testified trial counsel did not discuss with him whether to seek a competency hearing and that he would have requested a hearing if asked. He said he was not taking his medications at the time of the offenses.

The petitioner said that he told the trial court that he understood what was going on at the guilty plea hearing because "I thought I understood what was going on at the time." He recalled that at the hearing the trial court explained the offenses to which he was pleading guilty and the potential range of punishment. He said he did not recall the trial court's informing him that he would be required to register as a sexual offender, and he said that if he had been told this, he would not have pled guilty.

On cross-examination, the petitioner testified that he was aware that the sentencing range for especially aggravated kidnapping was fifteen to twenty-five years. He denied that this was the reason he pled guilty and said, "I don't know really the reason why. I thought – I was trusting in my lawyer to make a – trusting in him to just do his job make sure I get the best deal possible or prepare me for trial to proceed on trial for a resolution."

On redirect examination, the petitioner testified that the first time he became aware of the changes to his judgment form for aggravated sexual battery was when he spoke with a counselor at the penitentiary. He said that he filed his motion for correction of sentence when he learned of the changes.

Upon examination by the post-conviction court, the petitioner acknowledged that the trial court informed him for the first time at the guilty plea hearing that his conviction for especially aggravated kidnapping would be served at 100 percent. The post-conviction court asked why the petitioner did not stop the plea hearing at that point, and he replied, "I ain't – my first time. I never been in front – I ain't never been in that situation before."

## ANALYSIS

The petitioner makes three closely-related arguments on appeal as to his conviction for aggravated sexual battery. He asserts that trial counsel rendered ineffective assistance by not informing him that he would be required to register as a sexual offender, the trial court committed plain error by making the same omission, and the post-conviction court erred in finding that the sexual offender registration requirement was a collateral, not direct, consequence of his guilty pleas. The State responds that the post-conviction court properly denied the petitioner's claims. As we will explain, we agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court

are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See Wiley, 183 S.W.3d at 325; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

In its lengthy written order denying the petition, the post-conviction court concluded that the petitioner failed to establish that trial counsel did not inform him that, as a result of his pleas of guilty, he would have to register as a sex offender or that the court had a duty to do so:

> Petitioner claims that Counsel and [the trial court] failed to inform him of the full consequences of his plea, specifically the requirement to register as a sex offender. Addressing the issue of Counsel's failure to inform Petitioner of this requirement, Counsel testified that, although he did not have a specific memory of discussing that the [a]ggravated [s]exual [b]attery charge carried a requirement that Petitioner register as a sex offender due to the length of time since the discussion with Petitioner, it was Counsel's normal practice to do so. Counsel further testified that he understood the charge to carry such a requirement at the time that he represented Petitioner. Counsel testified he had no reason to believe that he failed to follow his normal procedure in Petitioner's case. In light of Counsel's testimony and the failure of Petitioner to bring forward any evidence on this matter other than his own testimony, Petitioner does not demonstrate by clear and convincing evidence that Counsel failed to address the issue of Petitioner's sex offender status.

> Regarding [the trial court's] failure to address the registration requirement during the plea colloquy, it is certainly deficient to fail to advise Petitioner of the requirement, although not Constitutionally so. The trial court is under no Constitutional obligation to inform a defendant of all the possible collateral consequences of his plea; instead, a defendant need only be made aware of the direct consequences of his plea. (citations omitted).

Reviewing holdings from other jurisdictions, the court noted in its order that "[m]ost courts foreclose Constitutional relief by ruling that the trial court must only advise a defendant of direct consequences of a plea, that is, consequences that are punitive or that otherwise have a definite, immediate, and largely automatic effect on the range of a defendant's punishment, and that sex offender registration is a collateral consequence, and not a direct consequence, of a plea because registration is remedial and regulatory, not punitive and not a penal consequence." The court observed that "[a]nother way courts foreclose Constitutional relief is by ruling that registration is not a duty imposed by the court and is out of the control of the court. Any liberty right that a sex

offender claims is impaired by registration and notification provisions is a consequence that does not have to be explained by a court upon its acceptance of a plea."

Considering these differing views, the post-conviction court adopted the majority view, explaining that "[t]his Court agrees with the majority of jurisdictions and holds that sex offender registration is a collateral consequence of a guilty plea because it is not a penal consequence and is out of the control of the court." Applying that principle to the present case, the court concluded that the "[p]etitioner's claim that he had a right to be informed by the trial court of the requirement to register as a sex offender is not cognizable in [a post-conviction] proceeding." The post-conviction court also denied the petitioner's claims that he was incompetent to plead guilty and that his counsel provided ineffective assistance.

## I. Ineffective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

 The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in Burns, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

 Although the petitioner presents as the issue for review whether trial counsel was ineffective in not informing him that he would be required to register as a sexual offender, he argues in his brief that counsel was ineffective in not informing him that his sentence for aggravated sexual battery was to be served at 100 percent or that he would be subject to lifelong community supervision. We will address these claims.

 The post-conviction court found that the petitioner had not proven by clear and convincing evidence his claim that trial counsel failed to inform him that he would be required to register as a sexual offender. At the evidentiary hearing, trial counsel testified that it was his normal practice to inform clients of this requirement. The petitioner testified that if he had been told of this requirement, he would not have pled guilty. However, the post-conviction court accredited trial counsel's testimony that the petitioner had been informed. The record supports this determination.

 Additionally, trial counsel testified that he remembered telling the petitioner that he would be required to serve 100 percent of his sentence for aggravated sexual battery. The petitioner testified that he understood that this sentence would be served at thirty percent. The post-conviction court found this claim to be baseless, both because the petitioner discussed with counsel the 100 percent requirement and was advised by the court during the plea colloquy that the sentence was to be served at 100 percent, responding that he understood this requirement:

> In addition, Counsel testified that Petitioner asked questions about the sentences and participated in a "give and take" exchange, including that he "had a problem with a hundred percent" on the aggravated kidnapping charge. Further, [the trial court] told Petitioner during the plea colloquy that "Aggravated Sexual Battery . . . carries anywhere from seven-point-two to thirty years in prison as a hundred percent crime. Petitioner answered that he understood this, as well as the details of his plea

agreement relating to the charge. The mere fact of a paperwork error does not, on its own, constitute ineffective assistance of counsel, especially when Petitioner was advised as to the actual percentage he would be serving by Counsel and the Judge during the Post-Conviction proceeding.

Given this, the post-conviction court concluded that the petitioner had "not overcome [c]ounsel's credible testimony by clear and convincing evidence." The record supports this determination.

Finally, the petitioner argues that trial counsel did not inform him that his aggravated sexual battery conviction would subject him to lifelong community supervision. However, at the evidentiary hearing, he did not ask trial counsel whether he told the petitioner about this requirement. Absent trial counsel's testimony on this point, we are unable to conclude that the petitioner has proven this factual allegation by clear and convincing evidence.

## II. Claims Regarding the Trial and Post-Conviction Courts

In two closely-related issues, the petitioner argues that the trial court erred in not informing him of the sexual offender registration requirement and that the post-conviction court erred in finding that the trial court was not required constitutionally to inform him of this requirement. He asserts that we should review his claim regarding the trial court as plain error. However, as we will explain, plain error analysis is inappropriate.

"When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. Crim. P. 52(b). In State v. Smith, 24 S.W.3d 274 (Tenn. 2000), our supreme court adopted the test for plain error first announced by this court in State v. Adkisson, 899 S.W.2d 626 (Tenn. Crim. App. 1994). In order for us to find plain error, Adkisson requires that "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" Smith, 24 S.W.3d at 282 (quoting Adkisson, 899 S.W.2d at 641-42). The presence of all five factors must be established by the record before we will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established. Id. at 283.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing

of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. This requirement is limited to the direct consequences of the plea; the failure of the trial court to explain the collateral consequences of a conviction will not render a guilty plea involuntary. See State v. Evans, 669 S.W.2d 708, 713 (Tenn. Crim. App. 1984). "The distinction between collateral and direct consequences 'turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" Adkins v. State, 911 S.W.2d 334, 350 (Tenn. Crim. App. 1994) (quoting Torrey v. Estelle, 842 F.2d 234, 236 (9th Cir. 1988)).

The Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 requires that persons convicted of certain enumerated sexual and violent sexual offenses register in person with a registering agency within forty-eight hours of (1) establishing or changing a primary or secondary residence; (2) establishing a physical presence at a particular location; or (3) becoming employed, practicing a vocation, or becoming a student in this state. Tenn. Code Ann. § 40-39-203(a)(1) (2006). Aggravated sexual battery, to which the petitioner pled guilty, is a violent sexual offense. Id. § 40-39-202(25)(C).

We now analyze the petitioner's claim of plain error. The parties agree that the record clearly shows that the trial court did not inform the petitioner of the sexual offender registration requirement. Regarding whether a clear and unequivocal rule of law has been breached, the petitioner argues, and we agree, that Tennessee Rule of Criminal Procedure 11 "require[s] that the trial courts advise defendants of certain rights before accepting guilty pleas and require[s] that this notification be upon the record." However, from this general proposition it does not necessarily follow that the trial court was required to inform the petitioner of the sexual offender registry requirement. We must analyze this claim in further detail.

This issue appears to be one of first impression in Tennessee. In its order denying the petition, the post-conviction court canvassed case law from other jurisdictions and found, as we have set out, that most jurisdictions considering the issue have held that sexual offender registration is a collateral consequence of a guilty plea. See Nollette v. State, 46 P.3d 87, 89-90 (Nev. 2002); State v. Bollig, 605 N.W.2d 199, 206 (Wis. 2000); State v. Burr, 598 N.W.2d 147, 158-159 (N.D. 1999); Doe v. Poritz, 662 A.2d 367, 406 n.18 (N.J. 1995); State v. Ward, 869 P.2d 1062, 1076 (Wash. 1994) (en banc); Boutwell v. State, 776 So. 2d 1014, 1016 n.2 (Fla. Dist. Ct. App. 2001); Ducker v. State, 45 S.W.3d 791, 796 (Tex. Ct. App. 2001); State v. Legg, 13 P.3d 355, 358 (Kan. Ct. App. 2000); Ray v. State, 982 P.2d 931, 934-36 (Idaho 1999); but see State v. Jones, 729 N.W.2d 1, 9 (Minn. 2007), overruling Kaiser v. State, 641 N.W.2d 900 (Minn. 2002); People v. McClellan, 862 P.2d 739, 745 (Cal. 1993) (en banc).

We agree with the conclusion of the post-conviction court that the sexual offender registry requirement is a collateral consequence of a defendant's guilty plea for the registration requirement is remedial and regulatory, not punitive or penal. Our conclusion is supported by the findings made by the General Assembly when it enacted the Registration Act. The General Assembly declared that the "primary governmental interest" furthered by the Registration Act was "protecting vulnerable populations from potential harm," and that continued registration of offenders was necessary "[t]o protect the safety and general welfare of the people of this state." Tenn. Code Ann. § 40-39-201(b)(4), (b)(6) (2006). The General Assembly also declared that, in making certain information about sexual offenders publicly available, it did not intend for the information to be used to inflict retribution or additional punishment on those offenders. Id. § 40-39-201(b)(8). In addition, we also note that the Sixth Circuit discussed the Registration Act in Cutshall v. Sundquist, 193 F.3d 466 (6th Cir. 1999), and determined that the Act served legitimate regulatory purposes and did not impose punishment. Accordingly, we conclude that the post-conviction court did not err in determining that the sexual offender registry requirement is a collateral consequence of a defendant's guilty plea.

On appeal, the petitioner additionally argues that the post-conviction court failed to consider the application of Tennessee Code Annotated section 39-13-524(a), which provides:

> In addition to the punishment authorized by the specific statute prohibiting the conduct, any person who, on or after July 1, 1996, commits a violation of § 39-13-502, § 39-13-503, § 39-13-504, § 39-13-522, or attempts to commit a violation of any of these sections, shall receive a sentence of community supervision for life.

In the petitioner's view, "[t]he purpose of this statute, which applies to sex offenders, is clearly to be part of the sentence for the offense, rather than a regulatory scheme having only collateral connection to the sentence."

Initially, we note that it is not clear from the record whether the petitioner argued to the post-conviction court, as he does on appeal, that the effect of this statute is that the lifelong community supervision requirement is, itself, punishment. In any event, because the petitioner arguably alleged he would not have pled guilty had he known about the community supervision for life requirement, we will address his allegation.

Our review indicates that our supreme court has yet to address this issue, but Nevada and New Jersey courts, in looking at similar statutory provisions, have concluded that lifetime supervision is a direct, not collateral, consequence of a plea. See Palmer v. State, 59 P.3d 1192, 1196-97 (Nev. 2002); State v. Jamgochian, 832 A.2d 360, 362 (N.J. Super. App. Div. 2003).

In Chad Alan Parker v. State, No. M2007-02799-CCA-R3-PC, 2008 WL 2938046, at *9 (Tenn. Crim. App. July 31, 2008), this court considered an similar issue. Parker pled guilty to one count of aggravated sexual battery and one count of burglary of an automobile. He was sentenced to ten years at 100 percent for the aggravated sexual battery conviction and to two years, to be served concurrently, for the burglary of an automobile conviction. As a result of Parker's conviction for

a sexual offense, the court ordered community supervision for life. Subsequently, Parker filed a petition for post-conviction relief, asserting at the evidentiary hearing, *inter alia*, that had he known "he would actually have to be on parole the rest of his life and that he would have to pay a $45 fee every month . . . he would have asked Counsel to get another plea agreement or to take the case to trial." Id. at *4.

This court explained its reasons for finding that "the Petitioner, relying on Counsel's advi[c]e that the two programs were the same, was significantly misinformed":

> [We] conclude that the Petitioner's guilty plea was not knowingly and voluntarily entered. Counsel readily admits that the Petitioner wanted to go to trial but participated in lengthy plea negotiations, after which he agreed to enter a "best interest" plea. Counsel informed the Petitioner that community supervision for life would require nothing more of the Petitioner than he was already required to do as part of his participation in the sex offenders registry. The sex offenders registry program is unsupervised, free, and requires that an offender register his address. The community supervision for life program is much more intensive, requiring the offender to report to a parole officer, who has wide discretion in the imposition of requirements, and to pay a monthly fee. Under these circumstances, we conclude that the Petitioner, relying on Counsel's advi[c]e that the two programs were the same, was significantly misinformed. Therefore, under such circumstances, his plea cannot be found to have been knowing and voluntary.

Id. at *8.

In the present case, the petitioner's claim is that he was not advised at all about community supervision for life, not, as in Parker, that he received incorrect legal advice. Therefore, we distinguish the holding in Parker.

We decline to follow the New Jersey and Nevada decisions, previously mentioned, believing the better approach is that taken by Judge Thomas in his dissent in Parker. In Parker, Judge Thomas likened the obligations of community supervision for life under Tennessee Code Annotated section 39-13-524(a) to prerequisites for a sex offender's release on parole and concluded that "the specifics of community supervision for life are . . . more of a collateral consequence of a guilty plea as opposed to a substantial consequence." Id. (Thomas, J., dissenting). Judge Thomas based his opinion on the following language in our supreme court's decision in Jaco v. State, 120 S.W.3d 828, 833 (Tenn. 2003):

> Finally, were we to adopt Mr. Jaco's argument that a guilty plea of a sex offender will be constitutionally deficient unless the offender is informed of the mandatory psychological evaluation and certification that is required before release on parole is appropriate, then guilty pleas to other felony offenses are arguably

invalid as well unless the offender is advised of all the criteria that will affect the offender's release on parole. We decline to adopt such a rule.

Based on this language and by analogy, Judge Thomas declined to "include the complete disclosure of all elements of parole supervision as a necessary requirement of the effective assistance of counsel and a constitutionally firm guilty plea." Parker, 2008 WL 2938046, at *10 (Thomas, J., dissenting).

The aim of community supervision as elucidated in section 39-13-524(d)(1) is "to protect the public from the person's committing a new sex offense, as well as promoting the rehabilitation of the person." Tenn. Code Ann. § 39-13-524(d)(1). Section 39-13-524 provides that upon a sex offender's completion of his or her term of imprisonment, he or she then falls under the supervision of the Board of Probation and Parole "in the same manner as a person under parole supervision" and is, by the Board, given individualized conditions to follow. Id. Even though it is referred to as lifelong, the sex offender can petition for release from community supervision after fifteen years. Id. § 39-13-525(a).

Given the protective and rehabilitative aims of sex offender community supervision and the similarities to regular parole, by extension of our supreme court's reasoning in Jaco, we conclude that community supervision is not punishment but, instead, a collateral consequence of the petitioner's guilty plea.

Because the sexual offender registry and community supervision requirements were collateral consequences of the petitioner's guilty plea, the trial court was not required to inform the petitioner of these requirements before accepting his plea. Although the better practice is to inform defendants of the requirements, we cannot conclude that the trial court's omission violated a clear and unequivocal rule of law. Therefore, the petitioner has not established the existence of one of the five prerequisites for plain error relief, and our analysis need go no further. The petitioner is not entitled to relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE

-12-