NOT DESIGNATED FOR PUBLICATION

No. 122,585

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAUL GUTIERREZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed December 3, 2021. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., BUSER, J., and WALKER, S.J.

BUSER, J.:  This is an appeal by Saul Gutierrez of the district court's denial of his postsentencing motion to withdraw plea. Gutierrez contends his court appointed attorney provided ineffective assistance of counsel by misleading him regarding the immigration consequences of pleading no contest to aggravated battery. Gutierrez, who is facing deportation, claims he was prejudiced as a result.

After an evidentiary hearing on the motion, the district court made extensive and detailed findings of fact and conclusions of law. The district court ruled that Gutierrez'

1

attorney had competently represented his legal interests and that Gutierrez was not prejudiced by his attorney's conduct. Accordingly, the district court determined that Gutierrez had not established manifest injustice to justify the postsentence withdrawal of his no contest plea. Finding no abuse of discretion, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

On November 7, 2016, the State charged Saul Gutierrez with aggravated indecent liberties with a child and rape. These charges were the result of allegations that while at his residence in February 2016, Gutierrez lewdly fondled two minor girls while their mother and aunt were away. The State subsequently amended the complaint, deleting the rape count and adding a second aggravated indecent liberties with a child charge. In April 2018, Gutierrez' first trial ended in a mistrial when, during voir dire, jurors observed that Gutierrez was wearing a house arrest bracelet.

On December 10, 2018, the first day of his second trial, Gutierrez entered into a plea agreement wherein he agreed to plead no contest to a single amended count of aggravated battery, a severity level 5 person felony, in violation of K.S.A. 2015 Supp. 21-5413(b)(2)(A). In return, the State agreed to dismiss the remaining count and to allow Gutierrez to seek a durational departure and dispositional departure to probation.

The plea agreement was memorialized in a petition to enter plea of no contest (plea petition) filed with the court clerk. The plea petition, typewritten in both English and Spanish, included the following paragraph regarding the potential immigration consequences of the plea:

> "**Deportation Consequences**. Defendant recognizes that pleading 'No Contest' may have consequences with respect to his immigration status if he is not a citizen of the United States. *Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading 'No Contest.'* Removal and other immigration

consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. *Defendant nevertheless affirms that he wants to plead 'No Contest' regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.*" (Emphases added.)

The plea petition was signed and sworn to by Gutierrez. Among the other representations he made in the pleading, Gutierrez stated that he understood fully "that the court may impose any sentence within the statutory limits and grant or deny probation independently of the agreement between the District Attorney, my attorney, and myself." Moreover, Gutierrez stated: "I . . . offer my plea of 'No Contest' with full understanding of all the matters set forth in the Information and in this petition." His attorney, Charles Lamb, signed a certificate of counsel that he had made no predictions or promises to Gutierrez regarding any sentence the district court may impose.

At the plea hearing, the district court asked Gutierrez if he understood the plea petition and Gutierrez stated he did. The district court asked Gutierrez whether he understood that he may not receive probation if he accepted the plea agreement, and Gutierrez stated he understood that possibility and he had not been promised probation by his attorney. Similarly, Gutierrez denied that he had been threatened or pressured to enter the no contest plea. Finally, the district court asked Gutierrez if he was satisfied with Lamb's legal representation, and Gutierrez stated he was. Gutierrez then pled no contest to aggravated battery. The district court accepted Gutierrez' plea and found him guilty of the charge.

Prior to sentencing, Gutierrez filed a motion for both a dispositional and durational departure sentence. In support, Gutierrez explained that he was 71 years old, had Parkinson's disease, and stage IV prostate cancer. Gutierrez stated that he was receiving

3

ongoing cancer treatment and was scheduled for another surgery in the near future. As a result, Gutierrez requested a departure sentence to probation.

A presentence investigation (PSI) report calculated Gutierrez' criminal history score as A. The PSI stated that Gutierrez was a United States citizen, and he possessed a Social Security number. Relevant to the issue on appeal, however, Gutierrez is not a United States citizen but a lawful permanent resident.

Sentencing was on February 15, 2019. At the outset, the district court denied Gutierrez' request for a dispositional departure to probation. But the district court granted a downward durational departure, sentencing Gutierrez to 100 months' imprisonment, which was less than the presumptive 122-to-136-month term.

Six days after sentencing, on February 21, 2019, Gutierrez filed a pro se motion to withdraw his plea, alleging that Lamb threatened him into entering a plea, lied to him about "fake" witnesses, and made sexual advances towards his sister. Thereafter, Gutierrez retained a new attorney, Michael Duma.

In 2019, the United States Immigration Control Enforcement filed a detainer to hold Gutierrez for future deportation. On October 29, 2019, Duma filed a second motion to withdraw Gutierrez' plea. The motion alleged that Gutierrez' prior counsel, Lamb, was ineffective for misleading him regarding the immigration consequences of his plea.

On November 14, 2019, the district court held an evidentiary hearing on Gutierrez' second motion to withdraw plea. The motion—which is the subject of this appeal—was limited to the issue of Lamb's alleged ineffective assistance regarding the immigration issue.

4

At the hearing, both Gutierrez and Lamb testified. Gutierrez testified that he told Lamb that he was legally in the United States and had served in the United States military. Gutierrez also testified that he never told his attorney or the individual who prepared the PSI that he was a United States citizen. Additionally, Gutierrez testified that Lamb did not discuss the immigration impacts of his plea and did not review with him the paragraph in the plea petition regarding the deportation consequences of his plea. As a result, Gutierrez testified that he did not believe there were any deportation risks associated with entering his no contest plea. Moreover, Gutierrez testified that he would not have entered the plea had he known it would subject him to deportation.

For his part, Lamb testified he assumed that Gutierrez was a United States citizen based on Gutierrez' representations that he was "legal" and had served in the military. Accordingly, the attorney testified that he did not spend significant time discussing the deportation consequences of the plea. Contrary to Gutierrez' testimony, however, Lamb said he did, in fact, discuss the Deportation Consequences provision in the plea petition, albeit in a more limited way than he would have had he known Gutierrez was not a United States citizen. Rather than reviewing the provision word-for-word, the attorney testified he remembered telling Gutierrez that upon his plea, "If you have an issue, you could be deported."

After taking Gutierrez' motion to withdraw plea under advisement, on November 14, 2019, the district court denied the motion in a bench ruling. The district court's oral findings of fact and conclusions of law were extensive and detailed—comprising 29 transcript pages. A written order denying Gutierrez' motion for failure to show manifest injustice was also filed.

According to the district court, its ruling denying the motion was predicated on three factors. First, and central to the district court's finding that Lamb did not provide

ineffective assistance, was that Lamb reasonably believed Gutierrez was an American citizen. As the district court explained:

"[T]he only fact in the defendant's favor is that he told Lamb that he was in Mexico. All other facts supported that Lamb was reasonable in his belief the defendant was a US citizen. Defendant's English was good. And while the defendant had an interpreter, it was made clear at the hearing on his motion to withdraw a plea that he did not need an interpreter. Moreover, this Court recalls hearings in which the defendant had an interpreter, yet he answered the Court's questions in English without the use of an interpreter.

"As already stated, the defendant told Mr. Lamb that he was legally here. In fact, when the defendant found that Lamb had asked his sister about his immigration, he called Mr. Lamb specifically to tell him that he was legally in this country and in the national guard. Mr. Lamb was also aware the defendant had been in the military and used the fact as one reason for requesting the departure.

"The defendant was 71 years old and had been in the country since he was eighteen years of age, according to his testimony.

"According to the PSI in this case, he was a US citizen, as it is marked on the front of that PSI, and possessed a Social Security number. But it was never established in this hearing where that information came from. And, according to the sentencing, no one corrected that PSI when they were offered the opportunity to correct any mistakes to the PSI.

"According to the defendant, he had a permanent resident card that would have been issued in 1965 and which had been renewed every ten years. According to the defendant, it had last been renewed in either 2010 or 2010—2009 or 2010.

"According to the PSI and the Court's ruling on the State's motion to admit Defendant's prior convictions, he had two separate prior convictions in 1993 and 1987 for sex offense convictions. The defendant's counsel, Mr. Duma, acknowledged, pursuant to a question by this Court, that he did not know why the defendant was not deported for those convictions. He also had, according to the PSI, a DUI conviction, the last one being 2016.

"Other than the defendant's name and the fact that he was Hispanic, which *Gudiel* [*State v. Gudiel*, No. 117,001, 2017 WL 4558556, at *4 (Kan. App. 2017) (unpublished

6

opinion)] rejected as a trigger for Defendant's counsel to investigate, and Defendant telling Lamb he was from Mexico, Lamb was reasonable in believing Defendant when he told him that he was legally here."

Second, apart from the district court's finding that, under the circumstances, Lamb was not required to inform Gutierrez of any immigration consequences from his plea, the district court found that Lamb had satisfied the requirements of *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), to inform certain clients of the risk of deportation. In particular, the district court noted that Lamb had warned Gutierrez of the immigration risks when reviewing the plea petition, and the petition also contained a provision that expressly warned Gutierrez of the potential deportation consequences.

The district court found:

"Moreover, unlike *Padilla* . . . Lamb did not give the defendant erroneous advice. Lamb testified that he told the defendant if he has an issue with immigration, then the defendant could be deported. Lamb carried out the—*Padilla*'s requirement that counsel inform the defendant whether his or her plea carries a risk of deportation.
. . . .
"Furthermore, the plea petition in this case, which was in English and in Spanish, specifically advised the defendant that his conviction was a removable offense. The paragraph informed the defendant that his no-contest plea could have consequences on his immigration status if he was not a citizen, but no one could predict with certainty.

"Finally, the defendant affirmed that he wanted to plea no contest regardless of the immigration consequences pursuant to that paragraph.
. . . .
"It's understandable in this case that neither Defendant nor Lamb discussed the paragraph in-depth because neither believed it was an issue, as Defendant believed that he was legal. [Lamb] asked him, according to his testimony, 'Are you okay here? Are you legal?' Defendant said, 'Yes.' Lamb said he did not go into more detail. He testified that he did not spend as much time as he normally would, and Defendant had no questions after they went over the plea.

7

"At the plea hearing, this Court addressed the plea petition. The Court asked the defendant if he had gone over it and discussed it with his attorney. The defendant answered that he had. The Court further asked if there was anything that he didn't understand. The defendant said, 'No, sir.' This Court asked if there was anything in the petition that he was not entirely clear about, and the defendant said, 'No, sir.' Despite Defendant's denial of reading the provision in the plea petition, his signing that [acknowledgement], coupled with Lamb's telling him he could be deported if he had immigration issues, was sufficient to satisfy *Padilla*. That is the—it has been so held in several other cases . . . . [Citations omitted.]"

In summary, the district court's findings regarding these two factors supported the court's conclusion of law that Lamb was not ineffective under the first prong of the two-prong constitutional standard established in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Lastly, the district court found that Gutierrez also had not established the second prong—the prejudice prong—of the *Strickland* standard, that but for Lamb's alleged errors, he would not have entered a plea of no contest but would have gone to trial. In this regard, the district court noted that Gutierrez was motivated to accept the plea agreement because he wanted to argue for probation. In addition, the district court noted that Gutierrez had substantially benefitted from the plea, avoiding the possibility of two life sentences without parole under the habitual sex offender statute, and, instead, received 100 months' imprisonment.

Although Gutierrez testified that he would not have entered a plea had he known of the deportation risk, the district court found his testimony was not credible given Gutierrez' prior representations at the plea hearing that he understood the provisions of the plea petition and wanted to seek probation. As a result, the district court concluded that, even if Gutierrez had established ineffective assistance on the part of Lamb, Gutierrez did not establish he was prejudiced as a result. Without a showing of attorney

ineffectiveness and prejudice, the district court concluded as a matter of law Gutierrez had not shown the requisite manifest injustice to withdraw his plea under K.S.A. 2020 Supp. 22-3210(d)(2).

Gutierrez appeals.

ANALYSIS

On appeal, Gutierrez contends the district court abused its discretion by denying his postsentence motion to withdraw plea. Gutierrez argues that he established manifest injustice to withdraw his plea because Lamb misled him regarding the immigration consequences of entering the plea, and that he was prejudiced as a result. Gutierrez notes he is facing deportation, a consequence Gutierrez claims he had not anticipated when entering his plea.

*Standards of Review and Summary of Relevant Kansas Law*

We begin with a summary of our standards of review and Kansas law applicable to motions to withdraw pleas. Appellate courts review a district court's decision to deny a motion to withdraw a no contest plea for an abuse of discretion. See *State v. Cott*, 311 Kan. 498, 499, 464 P.3d 323 (2020). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018). Moreover, appellate courts are bound by the district court's credibility determinations and may not reweigh the evidence presented during the hearing on the motion. *State v. Anderson*, 291 Kan. 849, Syl. ¶ 3, 249 P.3d 425 (2011).

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2020 Supp. 22-3210(d)(2). Factors a court generally considers in determining whether a defendant has shown the manifest injustice necessary to withdraw a plea after sentencing mirror those considered when reviewing for good cause to support a presentence motion to withdraw a plea. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018); see also *State v. Moses*, 280 Kan. 939, 950-54, 127 P.3d 330 (2006) (noting that a defendant's favorable plea bargain may support denial of postsentence motion to withdraw plea).

When determining whether a defendant has demonstrated good cause to withdraw a plea, a district court generally looks to the following three factors from *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006):  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). Instead, these factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

Of relevance to this appeal, when a defendant files a postsentence motion to withdraw plea alleging ineffective assistance of counsel, manifest injustice is established by meeting the constitutional test for ineffective assistance. The constitutional test asks: (1) whether the attorney's representation fell below an objective standard of reasonableness and (2) whether absent the attorney's errors, there is a reasonable probability that the result of the proceeding would have been different. See *Strickland*, 466 U.S. at 687; *State v. Kelly*, 298 Kan. 965, 969-70, 318 P.3d 987 (2014). Prejudice is shown if there is a reasonable probability that, but for the deficient performance, the

10

defendant would have insisted on going to trial instead of entering the plea. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome. 298 Kan. at 969-70.

A claim of ineffective assistance of trial counsel is a mixed question of law and fact requiring de novo review. *Thompson v. State*, 293 Kan. 704, 715, 270 P.3d 1089 (2011). However, there is a strong presumption that counsel provided the defendant with adequate assistance and used reasonable professional judgment in making all significant decisions. *Johnson*, 307 Kan. at 447; *Kelly*, 298 Kan. at 970. Indeed, judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. 298 Kan. at 970.

On appeal, Gutierrez contends that Lamb "was constitutionally ineffective under *Padilla v. Kentucky* . . . because he falsely told him that deportation was a risk only if he had 'immigration issues,' and failed to explain to him that his offense was deportable, even though he was a long-time legal resident alien." The State counters that Gutierrez' argument

> "ignores the fact that the Defendant received advice based on the information he provided to defense counsel, that he was advised of potential deportation consequences, and that he received what he wanted in his very favorable plea deal; the opportunity to apply for probation. Accordingly, he had failed to establish manifest injustice permitting him to withdraw his plea."

Of note, the parties agree that the *Strickland* factors and *Edgar* factors provide the proper analytical approach to resolving this appellate question.

*Deportation Consequences of a No Contest Plea to an Aggravated Felony*

At the outset, Gutierrez claims that because he pled no contest to aggravated battery, a crime of violence, his deportation was a "'virtual certainty.'" The State does not directly respond to this assertion, and the district court made no finding regarding whether federal law necessarily mandated deportation of an alien convicted of aggravated battery.

> "The Immigration and Nationality Act (INA) renders deportable any alien convicted of an 'aggravated felony' after entering the United States. 8 U.S.C. § 1227(a)(2)(A)(iii). Such an alien is also ineligible for cancellation of removal, a form of discretionary relief allowing some deportable aliens to remain in the country. See §§ 1229b(a)(3), (b)(1)(C). Accordingly, removal is a virtual certainty for an alien found to have an aggravated felony conviction, no matter how long he has previously resided here." *Sessions v. Dimaya*, 584 U.S. ___, 138 S. Ct. 1204, 1210-11, 200 L. Ed. 2d 549 (2018).

Upon his plea of no contest, Gutierrez was found guilty of aggravated battery in violation of K.S.A. 2015 Supp. 21-5413(b)(2)(A). Under the INA, an "aggravated felony" includes a "a crime of violence (as defined in 18 U.S.C. § 16) for which the term of imprisonment [is] at least one year . . . ." 8 U.S.C. § 1101(a)(43)(F) (2014). Further, 18 U.S.C. § 16(a) (2014) provides that a "crime of violence" includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." K.S.A. 2015 Supp. 21-5413(b)(2)(A) defines aggravated battery as "recklessly causing great bodily harm to another person or disfigurement of another person."

Given this statutory and caselaw precedent, for purposes of this appeal we will assume without deciding that federal law provides that, as a noncitizen of the United

States, upon Gutierrez' conviction for aggravated battery, deportation was a virtual certainty under federal immigration law.

*Did Lamb Know or Should Have Known that Gutierrez was Not a United States Citizen?*

Next, we consider whether, under the circumstances, Lamb was required to advise Gutierrez that upon his plea, deportation was a virtual certainty. Gutierrez asserts that "Lamb knew or should have known his immigration status." According to Gutierrez: "Even if there is no general duty to inquire into the citizenship status of every client, Mr. Gutierrez asserts that when defense counsel knows that a client is born outside of the United States, counsel should be required to ask one further question, 'Are you a United States citizen?'" Of note, Gutierrez does not favor us with legal precedent in support of this aspect of his argument.

In response, the State counters that Lamb did not render ineffective assistance because Gutierrez "represented to him that he was 'legal,' and gave no indication that he faced deportation." Moreover, "[d]efense counsel was clear that he believed the Defendant faced no immigration consequences because this is how the Defendant represented himself over the course of the case." In short, the State contends that Lamb did not know and had no reason to know that Gutierrez was subject to deportation. In support, the State cites *State v. Muriithi*, 273 Kan. 952, 46 P.3d 1145 (2002), *superseded by Padilla*, 559 U.S. 356, and *State v. Gudiel*, No. 117,001, 2017 WL 4558556, at *4 (Kan. App. 2017) (unpublished opinion).

In ruling on the question of whether, under the circumstances, Lamb knew or should have known that Gutierrez was not a United States citizen, the district court found the following relevant facts:

- Lamb was aware that Gutierrez was born in Mexico in 1947 and immigrated to the United States in 1965;
- Lamb knew that Gutierrez had served in the United States military;
- Lamb believed that Gutierrez was a United States citizen. According to the district court, "In fact, Lamb testified he did not learn [Gutierrez] was a permanent resident until the day of the [plea withdrawal] hearing . . . ."
- On one occasion, Lamb called Gutierrez' sister and asked her about Gutierrez' immigration. The defendant, learning about the call, called Lamb and told him, "[H]e was legally in the country."
- On another occasion, Lamb asked Gutierrez, "Are you okay here? Are you legal?" Gutierrez responded, "Yes."
- Although Gutierrez had an interpreter throughout the criminal proceedings, the district court opined that "he did not need an interpreter," noting that his English was "good."

All things considered, the district court concluded that other than Gutierrez' birth in Mexico, "All other facts supported that Lamb was reasonable in his belief [that] the defendant was a US citizen."

Given the facts known to Lamb, was his belief that Gutierrez was a United States citizen reasonable such that Lamb was not required to advise his client that upon his plea deportation was a virtual certainty?

Gutierrez contends that Lamb was constitutionally ineffective under *Padilla* and that "*Padilla* controls the outcome here." The State counters that *Padilla* is distinguishable because "Padilla's counsel knew Padilla was not a citizen of the United States and incorrectly advised Padilla that he would not need to worry about deportation."

In *Padilla*, the United States Supreme Court held, in relevant part:

"Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." 559 U.S. at 369.

There is a critical difference in the knowledge of Padilla's defense counsel regarding his client's immigration status and Lamb's knowledge of Gutierrez' immigration status. In *Padilla*, defense counsel knew that his client was not a United States citizen. Here, Lamb did not know Gutierrez was not a United States citizen. On the contrary, as found by the district court, Lamb had a reasonable belief that Gutierrez was a United States citizen. Significantly, it is not without consequence that despite Lamb's inquiries into Gutierrez' immigration status, his client never informed Lamb he was not a United States citizen. Instead, as the district court found, Gutierrez made many assertions that reasonably led his attorney to believe Gutierrez was, in fact, a United States citizen. Moreover, as the district court noted, the PSI expressly stated that Gutierrez was a United States citizen, and Gutierrez did not take any action to correct the PSI prior to sentencing.

In concluding that, under these circumstances, Lamb was not obligated to advise Gutierrez of any adverse immigration consequences upon his plea of no contest, the district court cited *Muriithi*, 273 Kan. 952. In *Muriithi*, our Supreme Court determined that "[t]he record does not show that Muriithi's counsel knew or should have known that he was an alien. Absent such [a] showing, Muriithi's counsel had no duty to investigate Muriithi's immigration status." 273 Kan. at 960. Muriithi established as a rule of law:

15

"Whether an attorney's failure to inform a client of possible deportation consequences of a nolo contendere plea constitutes ineffective assistance of counsel depends upon whether the attorney knew or should have known that the defendant was not a citizen of the United States." 273 Kan. 952, Syl. ¶ 3.

As recognized by the district court, *Muriithi* was superseded in part by *Padilla*. Yet, as acknowledged by Gutierrez, our court has, on numerous occasions applied this rule of law from *Muriithi* when evaluating appeals such as this one, wherein a noncitizen challenged the denial of a postsentencing plea withdrawal motion based on ineffective assistance of counsel. See *State v. Stephens*, 46 Kan. App. 2d 853, 856, 265 P.3d 574 (2011) (*Padilla* did not impose upon counsel "the duty to investigate the citizenship or immigration status of every client in a criminal case"); *Gudiel*, 2017 WL 4558556, at *4 (discussing cases) ("Based on the current state of the law, if [Defendant's] counsel did not know or should not have known that [the Defendant] was a noncitizen, counsel was not constitutionally ineffective in failing to advise [the Defendant] of possible immigration consequences."); *State v. Rodriquez*, No. 108,505, 2014 WL 1096553, at *10-12 (Kan. App. 2014) (unpublished opinion) (concluding that the defense attorney had no reason to know that the Defendant was not a citizen when the Defendant had not informed his attorney that he was not a United States citizen); *Hernandez v. State*, No. 107,069, 2013 WL 2395302, at *3 (Kan. App. 2013) (unpublished opinion) ("[W]e are not prepared to say that a criminal defense lawyer has an obligation to ask a client about his or her immigration status or citizenship simply because the person has a recognizably ethnic name or a Hispanic name. Nor are we prepared to say a lawyer must ask every client about his or her immigration status or citizenship.").

The factual circumstances found by the district court, which are supported by substantial competent evidence, bolster the court's legal conclusion that Lamb did not know and should not have known that Gutierrez was not a United States citizen. As a

16

result, Lamb was not constitutionally required to advise Gutierrez of potential immigration consequences of his no contest plea.

*Did Lamb Adequately Inform Gutierrez of Immigration Consequences?*

Next, we consider another aspect of the ineffective assistance of counsel claim— whether the district court erred in concluding, assuming Lamb knew or should have known that Gutierrez was not a United States citizen, that he adequately informed Gutierrez of the potential immigration consequences of entering his plea.

According to Gutierrez, the Deportation Consequences clause in the plea petition "only warned Mr. Gutierrez that the plea 'may' have deportation consequences and may be a 'removable' offense." In his view, this warning was insufficient. The State counters that Lamb's advice and the Deportation Consequences clause "fulfilled *Padilla*'s mandate."

The district court noted that Gutierrez' attorney testified that he reviewed the Deportation Consequences clause in the plea agreement with Gutierrez and warned him, "If you have an [immigration] issue, you could be deported." In addition, the district court noted the Deportation Consequences provision, which was presented to Gutierrez in English and Spanish, "specifically advised the defendant that his conviction was a removable offense."

Two sentences in the Deportation Consequences clause deserve special attention. First, as noted by the district court, the clause specifically informed Gutierrez that his plea to aggravated battery was a deportable offense: "Under federal law, a broad range of crimes are removable offenses, *including the offense*(*s*) *to which defendant is pleading* '*No Contest*." (Emphasis added.) Second, the Deportation Consequences clause concluded with: "Defendant nevertheless affirms that he wants to plead 'No Contest'

17

regardless of any immigration consequences that his plea may entail, *even if the consequence is his automatic removal from the United States*." (Emphasis added.) Importantly, at the plea hearing, Gutierrez testified that he had read the plea agreement petition, reviewed it with Lamb, and understood its provisions. Further, despite its warnings and disclaimers, at the plea hearing Gutierrez testified that he still wanted to enter a no contest plea.

At the plea withdrawal hearing, in contravention of his statements made at the plea hearing and in the plea petition, Gutierrez denied that he had read the Deportation Consequences clause. But the document was signed and sworn to by Gutierrez, and Lamb testified that he discussed the deportation consequences provision in the plea petition with him, albeit in a more limited way given that he was unaware that Gutierrez was not a United States citizen. Lamb testified that he remembered telling Gutierrez that upon his plea, "If you have an issue, you could be deported."

On several occasions, our court has held that provisions in plea agreements and plea petitions, like the Deportation Consequences clause in this case, sufficiently apprised the defendant of the immigration consequences of entering a plea and satisfied the requirements of *Padilla*. See *State v. Romero*, No. 112,891, 2016 WL 463783, at *3 (Kan. App. 2016) (unpublished opinion) ("[T]he evidentiary record here establishes [Romero] was made aware at the time he entered his guilty plea that his legal status in the United States was at risk and that there was a likelihood that he would be deported as a consequence of his plea."); *State v. Montes-Jurado*, No. 105,564, 2013 WL 1444321, at *4 (Kan. App. 2013) (unpublished opinion) ("Here, the acknowledgment of rights and entry of plea that [the Defendant] signed satisfied the requirements of *Padilla* for two reasons. First, the acknowledgment of rights and entry of plea contained a provision that expressly informed him about the potential immigration consequences that he faced if he pled guilty. Second, [the Defendant] conceded that his counsel had gone over this document with him, and the trial court determined that there was no indication that he did

18

not understand it."); *State v. Lowe*, No. 103,678, 2012 WL 139264, at *4 (Kan. App. 2012) (unpublished opinion) ("[W]e believe the information in the acknowledgement satisfied the requirements of *Padilla*. That language clearly identified deportation as a likely outcome and not merely an abstract possibility.").

Applying the law to the facts, we conclude that although Lamb was not required to advise Gutierrez of potential adverse immigration consequences, the oral and written advice provided to Gutierrez was sufficient to meet the *Padilla* standards.

In summary, Lamb did not know and had no reason to know Gutierrez was not a United States citizen subject to deportation. As a result, Lamb was not required to advise Gutierrez of the potential adverse immigration consequences of his no contest plea. But assuming Lamb had a duty to advise Gutierrez of these consequences, he fulfilled that duty by his oral and written advice. In short, under the totality of circumstances of Lamb's representation, we hold the district court did not err in ruling that his legal representation was not ineffective.

*Apart from Any Attorney Ineffectiveness, Did Gutierrez Establish Prejudice?*

For the sake of completeness, we next consider, assuming Lamb was ineffective, whether the district court erred in ruling that Gutierrez failed to establish the second prong of the *Strickland* test—that there is a reasonable probability that, but for Lamb's errors, Gutierrez would not have pled guilty but proceeded to trial. Prejudice is shown if there is a reasonable probability that, but for the deficient performance, the defendant would have insisted on going to trial instead of entering the plea. See *Kelly*, 298 Kan. at 969-70.

At the plea withdrawal hearing, Gutierrez testified that, had he known the immigration consequences of his plea, he would not have pled and, instead, would have

19

proceeded to trial. Gutierrez also testified that he wanted to stay in the United States to receive ongoing cancer treatments.

The district court made the following findings on the issue of prejudice:

"In this case, if the defendant had been convicted of the charges that he was facing, the two counts of aggravated indecent liberties with a child, both off-grid person felonies, he faced a likelihood of a much longer sentence because he would have fallen under [K.S.A. 2015 Supp.] 21-6626, the aggravated habitual sex offender statute. He would have faced life without any possibility of parole for each count. That sentence is significantly longer than the 130 months or even the 100 months which this Court granted him.

. . . .

"During the sentencing hearing in this case, Lamb said Defendant's decision to plead was his best chance to avoid prison given the allegations and his prior convictions. It is clear the defendant changed his mind because he had an opportunity to request departures regarding the length of sentence and requesting probation. Moreover, this defendant has failed to show that he has a colorable defense to show—in this case. Defendant has failed to show that his decision to reject the plea offer, which is what he must show to show prejudice, and would have gone to trial, would not have been rational under the circumstances in this case.

"This Court handled this matter, and it was clear that on the day—this Court remembers the defendant wanted to plead because he thought he had an opportunity to get probation. This Court does not believe that he has shown prejudice, and therefore the defendant's motion to withdraw his plea is denied."

From these findings it is apparent the district court did not believe Gutierrez' after-the-fact assertions that he would not have entered his no contest plea had he known of the immigration consequences. This was a credibility determination made by the district court. In this regard, "[a]ppellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. [Citation omitted.]" *State v.*

20

*Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). It is not our role to contradict the district court's credibility determination.

Moreover, as discussed earlier, there was substantial competent evidence that Gutierrez, with knowledge that he was not a United States citizen, was fully aware of the immigration risks of his plea yet insisted on entering the plea. And given Gutierrez' statements at the plea hearing that he both understood the plea petition and wanted to seek probation, there is substantial competent evidence to support the district court's finding that Gutierrez was motivated to accept the plea agreement, regardless of the immigration consequences, because he wanted the opportunity to obtain a dispositional departure sentence of probation. All things considered, we find no error in the district court's determination that Gutierrez failed to establish prejudice as a result of any claimed ineffectiveness by Lamb.

In summary, the district court reasonably concluded that Gutierrez' appointed attorney competently represented his legal interests and that Gutierrez failed to demonstrate there was a reasonable probability that, but for the claimed deficient performance, he would have insisted on going to trial instead of entering his plea.

Finally, as discussed earlier in the context of Gutierrez' ineffective assistance of counsel claim, we also conclude that Gutierrez failed to establish the remaining *Edgar* factors—that he was misled, coerced, mistreated, or unfairly taken advantage of, or that his plea was not fairly and understandingly made. See *Frazier*, 311 Kan. at 381; *Edgar*, 281 Kan. at 36. At the plea hearing, Gutierrez testified that he was of sound mind, he understood the provisions of the plea petition and the consequences of entering his plea, he had not been threatened or coerced into entering a plea, and he was satisfied with Lamb's legal representation. Accordingly, based on Gutierrez' own testimony at the plea hearing and Lamb's testimony at the plea withdrawal hearing, we find that Gutierrez has

failed to establish the remaining *Edgar* factors indicated manifest injustice existed to warrant withdrawal of his plea.

In conclusion, for all of these reasons, we hold the district court did not abuse its discretion when it ruled that Gutierrez did not show manifest injustice to justify setting aside the judgment of conviction and withdrawal of his no contest plea. See K.S.A. 2020 Supp. 22-3210(d)(2).

Affirmed.